No. 48,099

Edwin H. Reichuber, *Appellant*, v. D. H. Cook Well Servicing, and Western Casualty & Surety Company, *Appellees*.

(551 P. 2d 810)

Opinion filed June 12, 1976.

*Raymond L. Dahlberg, of* Turner and Hensley, Chartered, of Great Bend, argued the cause and was on the brief for the appellant.

*Thomas J. Berscheidt,* of Ward & Berscheidt, of Great Bend, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Owsley, J.: This is an appeal by the claimant, Edwin H. Reichuber, from a workmen's compensation award. The only question presented is whether there is substantial competent evidence to support the district court's award.

On May 7, 1969, claimant sustained an accidental injury to his left knee while working on a drilling rig in the course of his employment with the respondent-appellee, D. H. Cook Well Servicing. After initial treatment by his family physician, claimant was referred to Dr. Reiff Brown, an orthopedic surgeon, who operated on his knee twice during the month of August, 1969. Dr. Brown continued to treat claimant for his knee injury for an extended period of time. Approximately one year after his operations, claimant began experiencing lower back pain which he felt was caused by his knee injury. Claimant subsequently developed a lung disease and a heart condition.

Prior to his hearing, claimant had received 170 weeks of workmen's compensation benefits for temporary total disability and thirty weeks of temporary partial disability amounting to a total of $8.599.50. In addition, medical expenses had been paid by the respondent and its insurance carrier in the amount of $2,944.67.

At the hearing before the examiner, claimant testified that he

was fifty-six years old, married, and lived on a farm with his wife and four sons. He stated he had only a seventh grade education and had never received any special training. Since the early 1950's claimant had been working for the respondent doing "floor hand work." He claimed the only type of work he had done was heavy manual labor consisting of lifting heavy objects. According to claimant's testimony, on the day of the accident he was pulling a pipe on a drilling rig when it erupted. While attempting to get out of the way, claimant slipped and injured his knee. He stated that he had constant pain as the result of his knee injury and that it was difficult for him to walk. Because of his bad back and knee he was forced to give up his farming operation. Claimant did not feel he was capable of going back to the same kind of work he did before the injury.

Dr. Brown testified there was internal derangement of claimant's knee due to the accident, which required an arthrotomy to remove the lateral posterior meniscus. He said claimant often complained of low back pain. When asked whether the knee injury caused his back to become symptomatic, he stated:

"Yes, I think it is reasonably certain that the abnormal gait necessitated by his contramalacia put a stress and strain on the degenerative change that was already present in the back causing that area to become symptomatic and probably even to increase the extent of the degeneration."

It was Dr. Brown's opinion that as a result of his knee injury and back problems claimant had a twenty-five percent permanent functional impairment to the body as a whole.

Dr. Roy B. Coffey, an orthopedic surgeon, examined claimant on January 27, 1974. He testified that claimant's back condition had been aggravated by the accident and that in his opinion claimant had a thirty-five to forty percent impairment of function to the body as a whole as a result of his knee and back problems. This impairment of function, in his opinion, was causally related to the accident. When questioned as to the prognosis for claimant, Dr. Coffey stated:

"A. Well, his knee is not in the best of shape. I doubt if he could go back to any drilling unit in the oil field. You cannot walk on a bent knee and stay active without doing and causing more serious trouble for this knee; and his back is probably, the point at age 56 where he is not going to be able to stress it that much more.

"Q. What would be your recommendation to him concerning heavy lifting?

"A. My recommendation would be that he shouldn't do it.

"Q. What about repeated bending or stooping?

"A. He can't do that either without causing more trouble.

"Q. Can walking on this knee aggravate his back condition?

"A. With a knee constantly bent, you bet. . . ."

Later, Dr. Coffey was asked if claimant should avoid manual labor:

"Q. Your recommendation to him is to avoid manual labor?

"A. You bet."

On September 25, 1974, the examiner entered an award in favor of claimant, finding that he had sustained a seventy-five percent permanent partial disability to the body as a whole. The award was reviewed by the workmen's compensation director who affirmed the award with only minor computational modifications. On appeal to the district court, the award was reduced to a thirty-five percent permanent partial disability to the body as a whole. Claimant argues there was no substantial competent evidence to support the district court's reduction of the award.

K. S. A. 1975 Supp. 44-556 (b) states that the district court is given the plenary power to "grant or refuse compensation, or to increase or diminish any award of the director as justice may require." In such cases the district court conducts a trial de novo with the jurisdiction and duty to make an independent adjudication as to the facts as well as the law. (*Gawith v. Gage's Plumbing & Heating Co., Inc.*, 206 Kan. 169, 476 P. 2d 966.)

Appeals from the district court in workmen's compensation cases are limited to questions of law. (K. S. A. 1975 Supp. 44-556 [c].) Whether a district court's judgment is supported by substantial competent evidence is a question of law, rather than a question of fact. (*Jones v. City of Dodge City*, 194 Kan. 777, 402 P. 2d 108.) If, when viewed in the light most favorable to the prevailing party below, there is substantial evidence to support the district court's factual findings, this court is bound by those findings and we have no power to weigh the evidence or reverse the final order of the court. (*Day and Zimmerman, Inc. v. George*, 218 Kan. 189, 542 P. 2d 313; *Buck v. Beech Aircraft Corporation*, 215 Kan. 157, 523 P. 2d 697; *Rund v. Cessna Aircraft Co.*, 213 Kan. 812, 518 P. 2d 518; *Jones v. City of Dodge City*, supra.) As stated in *Silvers v. Wakefield*, 176 Kan. 259, 270 P. 2d 259:

"Under G. S. 1949, 44-556, appellate jurisdiction of this court in compensation cases is confined to reviewing questions of law only. In doing so, it is necessary to determine whether the record contains any evidence which tends to support the judgment rendered, and in so considering, this court is required

to view all testimony in the light most favorable to the prevailing party below. If when so considered, the record contains any evidence which supports the trial court's judgment, that judgment must be affirmed; being conscious at all times of the fact that this court has little concern with disputed questions of fact in ordinary lawsuits and none whatever in workmen's compensation cases, except to ascertain whether the record contains any evidence which on any theory of credence would justify the trial court's finding or conclusion of fact." (pp. 259, 260.)

In the instant case the dispute concerns the proper percentage of claimant's disability. It is well settled that the extent of a claimant's disability is a question of fact, and if the record discloses substantial competent evidence on which the district court could base its findings, we are bound by those findings. (*Scott v. Day and Zimmerman, Inc.,* 215 Kan. 782, 529 P. 2d 679; *Meyersick v. Rodney Milling Co.,* 213 Kan. 678, 518 P. 2d 398.) The test for determining the disability of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain work of the same type and character he was capable of performing before his injury. (*Scott v. Day and Zimmerman, Inc.,* supra; *Puckett v. Minter Drilling Co.,* 196 Kan. 196, 410 P. 2d 414; *Gutierrez v. Harper Construction Co.,* 194 Kan. 287, 398 P. 2d 278; *Daugherty v. National Gypsum Co.,* 182 Kan. 197, 318 P. 2d 1012; *Dobson v. Apex Coal Co.,* 150 Kan. 80, 91 P. 2d 5.)

We note that claimant was not awarded total disability by the examiner, the director, or the district court, despite the testimony of Dr. Coffey to the effect claimant should avoid the same type of heavy manual labor he had been engaged in prior to the accident. Ordinarily, such testimony would be sufficient to justify an award of total disability. (See, *Scott v. Day and Zimmerman, Inc.,* supra.) It is not the function of this court to weigh the evidence or judge the credibility of witnesses. If the record contains any evidence which supports the district court's judgment, that judgment must be affirmed. In *Day and Zimmerman, Inc. v. George,* supra, we stated:

"While testimony such as that disclosed in this record can reasonably be the subject of opposite interpretations and even support opposing conclusions, the test is whether the record contains any substantial competent evidence which on any theory of credence justifies the trial court's findings. It is not the function of this court to judge the credibility of witnesses or to determine what weight should be given their testimony." (p. 196.)

The award of the trial court granting the claimant thirty-five percent general bodily disability must be supported by the evidence. The testimony of claimant and Dr. Coffey supports a one hundred

percent general bodily disability for performing like and similar work. If there is any evidence in the record to support the district court's award it must be based on the testimony of Dr. Brown. He testified as to the history of claimant's injuries and the two operations performed on his knee. In June of 1972 he examined claimant. He testified as to the results of the examination:

". . . [T]he examination of his knee revealed tenderness over the medial aspect of the joint. and investigation of the medial ligament revealed no laxity, however, there was pain in that area. There was still considerable grinding and crepitus beneath the patella indicating a rather severe contramalacia of the patella and this had been indicated at surgery. The back examination revealed tenderness in the lumbar area and surrounding paraspinal muscles with markedly limited range of motion and complaints of pain and of moderate paraspinal muscle spasm seen throughout the range of motion testing. The neurological testing was normal. X-rays were repeated at that time and they revealed a rather severe involvement of the facets at L-4 and L-5 and L-4 S-1 with spurring at the disc spaces. On comparison with x-rays taken one year previously, there had been a slight increase in the narrowing of the lumbosacral discs."

Dr. Brown then stated:

". . . [T]he abnormal gait necessitated by his contramalacia put a stress and strain on the degenerative change that was already present in the back causing that area to become symptomatic and probably even to increase the extent of the degeneration."

On cross-examination, Dr. Brown responded to a question regarding claimant's back condition:

". . . [W]ith the changes that he had in his knee I doubt that he would have remained asymptomatic for very long. I think as soon as he put more stress and strain on it being up on it more he probably would have had some degree of symptoms. If we were to assume though that his knee did remain completely asymptomatic and he had no limp we could expect a corresponding decrease in symptoms and the degenerative problems in the low back and these would probably remain asymptomatic as long as he didn't put unusual stress or strain on the back either by recurrence of an abnormal gait or in the process of increased lifting and bending."

Dr. Brown concluded claimant had a permanent functional impairment of twenty-five percent to the body as a whole and would require future medical attention. He was not asked, nor did he testify, as to any percentage of work disability. He testified that claimant had a heart condition and emphysema, which would prevent him from returning to employment involving heavy manual labor. He was not asked directly if the knee and back problem would prevent claimant from returning to manual labor, but his

foregoing prognosis clearly states claimant's abnormal gait or any form of lifting or bending would increase his symptoms and his degenerative problems.

We are fully cognizant of our obligation to consider the evidence in the light most favorable to the prevailing party. We have diligently searched the record for a scintilla of evidence which would support the district court's award. Our search has been fruitless. Any award in this action for less than total disability has no support in the record. The district court is reversed with directions to enter an award in favor of the claimant for total permanent disability.

Reversed and remanded with directions.

SCHROEDER and FROMME, JJ., dissenting.

PRAGER, J., not participating.