No. 48,476

Cleveland Crow, *Appellant,* v. City of Wichita, *Appellee.*

(566 P.2d 1)

Opinion filed May 14, 1977.

*James S. Phillips, Sr.,* of Phillips & Phillips, Chartered, of Wichita, argued the cause and *James S. Phillips, Jr.,* of the same firm, was with him on the brief for the appellant.

*Stephen J. Jones,* of Wichita, argued the cause, and *John Dekker,* and *H. E. Jones,* both of Wichita, were with him on the brief for the City of Wichita, appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal by the claimant-appellant, Cleveland Crow, from adverse determinations in two interrelated workmen's compensation actions which were consolidated for trial by the court below. The first case, docketed in the district court, was an appeal by the respondent-appellee, city, a self-insurer under our Workmen's Compensation Act (K.S.A. 44-501, *et seq.* [now 1976 Supp.]), from an award of the director granting claimant a fifty percent permanent partial general bodily disability. The trial court reversed that award finding there was no permanent disability which arose out of and in the course of the claimant's employment. The second case filed in the court below was an action by claimant under K.S.A. 44-512a [now 1976 Supp.], for the city's failure to pay compensation within twenty days after written demand for the same had been made by claimant.

The claimant was employed by respondent city as a helper on a sanitation truck, a job he had held for over twenty years. On June 10, 1974, claimant accompanied the truck driver, Raymond Newell, to the City Ice Dock where they were to pick up trash. Newell backed the truck up to a concrete loading dock, whereupon claimant climbed on the dock and dumped several trash barrels into a hopper at the rear of the truck. Newell testified he then drove the truck up an incline and stopped it a short distance away from the loading dock so that some trash, which had fallen at the base of the dock, could be picked up. While claimant was picking trash off the ground, Newell's foot slipped off the brake and the truck rolled back, pinning claimant against the concrete loading dock. Hearing the claimant yell, Newell pulled the truck forward whereupon claimant fell to the ground. He was rendered unconscious from the accident and fall. Newell testified he told a man at the ice dock to call an ambulance for the claimant and then reported the accident to the city sanitation office.

Claimant was taken to St. Francis Hospital where he was examined in the emergency room by Dr. George J. Farha, a surgeon. Dr. Farha testified the claimant had severe abdominal pain and appeared to be in some type of shock. Exploratory

surgery was performed by Dr. Farha because of suspected bleeding in the abdomen as a result of the accident. Dr. Farha testified in pertinent part:

". . . We explored him and found a tear in the mesentery. Because of that we had to resect a foot or so of the small intestine. This should have no effect on his function or physiological health.

"Once the incision has healed, after two months or so, he should be able to go back to heavy lifting. A similar job, if there are no other injuries.

"I did not see Mr. Crow after he was released from the hospital on June 25, 1974. We usually release people to return to work 9 or 10 weeks after surgery if they have done well. I don't see them again.

"Mr. Crow was to see Dr. Kneidel for disability of the hip. I released him to return to work on October 10, 1974. My release to return to work would go along with Dr. Kneidel. Usually, people with abdominal surgery who had an excellent course in the hospital for two weeks, they are allowed to go to work.

"My abdominal surgery would have no effect on a patient's back."

Dr. Thomas W. Kneidel, a Board Certified Orthopedic Surgeon, also examined claimant in the emergency room. Concerning this examination, Dr. Kneidel testified:

"I first saw Mr. Crow on June 10, 1974 in the emergency room of St. Francis Hospital. I again saw him on June 11, 1974. Mr. Crow's complaints at that time, aside from soreness from abdominal surgery, were tenderness around the iliac crest or the waistline area on the left side of the hip and some pain with motion at the hip joint. There was no neurologic deficit in the left leg, no evidence that a nerve was pinched or not funtioning.

"A series of x-rays were taken which showed a fracture of the wing of the ilium on the blade of the iliac bone. It extended from the upper margin where the stomach muscles attach through the wing of the ilium to the greater sciatic notch. There was no involvement of the hip joint.

"I felt this was an undisplaced non-weight bearing fracture and it could be treated by keeping the patient off weight-bearing.

"I saw Mr. Crow each day in the hospital, and subsequently saw him on July 10, 1974. At that time he had complaints of some pain around the left hip area. Examination revealed a good range of motion in his hip joint and no specific tenderness over the fracture area. X-rays show progressive healing and satisfactory alignment of the fracture."

After claimant was released from the hospital on June 25, 1974, Dr. Kneidel continued to see claimant on a monthly basis. Concerning an examination of claimant in August of 1974 Dr. Kneidel testified:

"Mr. Crow did not have any complaints concerning his lower back on August 6, 1974.

"X-rays taken in August show marked degenerative changes in the lower lumbar spine, including large spur formations and calcifications outside the disc spaces at

the L3-4, L4-5 and L5-S1 level. These are degenerative arthritic changes, wear and tear type of arthritis. These degenerative changes antedated the accident and, although Mr. Crow was a very poor historian, he never made any complaints about his back."

Dr. Kneidel's final examination of claimant was on October 3, 1974, about which he testified:

". . . Upon physical examination the patient was able to walk without support, had a full range of motion in his hip and x-rays taken at the time showed complete healing of the fracture. I released Mr. Crow to return to regular work."

Dr. Kneidel further testified concerning his final examination of claimant that insofar as objective physical findings were concerned, claimant should have been able to return to work on a trash hauler and that the accident did not in any way diminish claimant's ability to perform the type of work that he was doing at the time of the accident. On cross-examination Dr. Kneidel admitted that an injury such as claimant's could have aggravated a preexisting condition, but he concluded his testimony by indicating that based on complaints received from claimant, physical findings made, history taken from claimant and treatment of him there was no evidence that he had suffered an injury to his lower back.

Claimant returned to work shortly after his October 1974 examination by Dr. Kneidel. Claimant and the truck driver, with whom he was working, testified that he was unable to do any lifting. Claimant testified that after several days of trying to work at his old job his supervisor advised him the city had no jobs he could perform and claimant was placed on an early retirement pension of the city's retirement plan.

Claimant went to see Dr. Daniel Thompson, a physician and surgeon who testified that he was certified by the Board of Family Practice, but had never had any orthopedic training. Dr. Thompson examined claimant and described his findings in these words:

"I saw Mr. Crow only one time, on November 12, 1974. He gave me a history of having been run over by a truck six or seven months prior to the time he was here. He stated that Dr. Farha did exploratory surgery for internal injuries. At the time he was here, he was complaining of pain in his back and pain in his left hip. He was here because he stated that he was unable to carry on his job and unable to lift barrels. He stated that he was unable to stoop over, that he had pain down his left leg when he did stoop, that there was some stiffness in the left leg and that his abdomen was sore and he was constipated.

"Upon examination, I made the following findings: The abdomen was still tender to palpation, with no masses or hernias; there was an absent reflex on the left, but I don't know whether it is the leg or what, I suspicion it's the left leg. The reflexes on the right were all normal. The reflexes on the right were hyperactive. There was little motion in the lower back and marked spasm in the paraspinal muscles. There was no limitation on bending to either side, but marked limitation on forward bending.

"The x-rays showed three narrow interspaces, some scoliosis of the lumbosacral spine, numerous osteophyte formations, a sort of calcified ligament between the vertebra.

"One further finding was that there was a little atrophy on the left leg."

Dr. Thompson concluded that claimant's injuries were the direct result of the accident and as to disability testified:

"For any kind of job in the labor market, I would say his disability is 25 to 35%. As to his ability to perform his job with the City, I don't think he would be able to do that at all. From that type of work he would have 100% disability."

Based upon the depositions of the three doctors, plus the testimony of claimant, his supervisor, and the truck driver, the examiner found that the claimant had a fifty percent permanent partial disability to the body as a whole as a result of the accident in question. The award ordered respondent to pay $3,473.80 in one lump sum and the balance of $14,543.10 was ordered paid at the rate of $42.90 per week for 339 weeks or until further order of the director. No review by the director was requested and an order approving the examiner's award of $17,104.66 was entered by the director and filed on December 8, 1975.

Thereafter, on December 9, 1975, the city filed a notice of appeal to the district court. During the pendency of this appeal, a bond was filed as required by K.S.A. 44-556 [now 1976 Supp.]. However, it was stipulated that compensation was not paid by the city by December 28, 1975; that demand was duly made by the claimant on the city for payment of compensation; that this written demand was received by the city on January 8, 1976; and that no compensation was paid pursuant to 44-556 by January 28, 1976.

After demand and default by the city, on February 2, 1976, claimant filed an action pursuant to 44-512a seeking to accelerate all amounts awarded by the director and praying for judgment in the sum of $17,104.66, plus additional medical expenses.

Upon motion of the city, its appeal in the original compensation action was consolidated for hearing with the claimant's

44-512a action. This consolidation was made over objection of the claimant. On April 8, 1976, claimant moved for summary judgment in his 44-512a action for the entire amount of the award of the director. The trial court sustained this motion in part holding:

". . . [T]hat the motion for summary judgment should be sustained insofar as it relates to the compensation due for the ten weeks prior to the Director's award entered on December 8, 1975, and the following 17.3 weeks to the date of hearing, April 8, 1976, pursuant to K.S.A. 44-556. Said judgment should be for the total of 27.43 weeks at the rate of $42.90 per week, as set forth in the Director's award, or a total sum of $1,176.75."

The trial court thereafter reviewed the transcripts and depositions furnished in the original compensation appeal. After hearing arguments on this matter, the court ruled in pertinent part as follows:

". . . That the credible medical evidence indicates that the injuries suffered on June 10, 1974 were to the abdomen and to the left hip; that there was no back injury which can be related to the accident on June 10, 1974; that the testimony of Daniel Thompson, M.D., is speculative; and that the plaintiff has not carried his burden of proof by a preponderance of the credible evidence that he suffered a back injury in the accident of June 10, 1974, which would disable him from further employment as a trash hauler. The Court further finds that the Examiner's award was in error and that there is no disability which arose out of and in the course of the plaintiff's employment with the City of Wichita, Kansas, and the appeal of the City should be sustained and the finding entered that there is no disability as a result of this accident."

In claimant's appeal to this court from the disposition of the 44-512a action the following contentions are raised for our consideration:

"1. The trial court erred, as a matter of law, in holding that under K.S.A. 1973, Vol. 3a, 44-512a appellant is entitled only to compensation through the date of hearing since pursuant to said statute appellant was entitled to the full amount of compensation in the sum of $17,104.66.

"2. The District Court's construction of K.S.A. 1973, Vol. 3, 44-512a and 44-556 was arbitrary and capricious and thus violated appellant's right to due process guaranteed by the Fourteenth Amendment of the United States Constitution and Section 18 of the Kansas Bill of Rights.

"3. The trial court erred in consolidating appellant's action with Appellee's appeal for the reason that the issues were fundamentally dissimilar and that such consolidation prejudiced appellant's right to a fair adjudication and constituted an abuse of judicial discretion.

"4. The trial court erred in hearing respondent-appellee's appeal since a correct interpretation of K.S.A. 1973, 44-512a would have rendered the appeal moot."

In his appeal from the adverse determination in the original compensation case, claimant has also specified four points on appeal, two of which are identical to points Nos. 3 and 4 in the 44-512a appeal. The two remaining contentions are stated by the claimant as follows:

"1. There was no substantial competent evidence to support the trial court's finding that no disability arose out of and in the course of appellant's employment.

"2. The District Court's findings with respect to the issue of disability were capricious in that such were manifestly contrary to the weight of the evidence and hence such arbitrariness constituted a violation of appellant's right to due process."

Contentions Nos. 1, 2 and 4 in claimant's appeal from the 44-512a action may be treated together. The central issue involved in these points is whether the trial court properly applied K.S.A. 44-512a (1974 Supp.) which became effective on July 1, 1974, ten days after claimant's accident. Claimant took the position in the court below and maintains it on appeal that his 44-512a action is governed by the prior law; that the trial court decided the case under the old law, but erroneously applied it and, as he indicates in his point 4, if his position prevails, application of the provisions of the old law 44-512a would render moot the compensation case; and that his award, as approved by the director, would stand. In support of his position claimant contends the trial court misconstrued the import of *Griffith v. State Highway Commission of Kansas*, 203 Kan. 672, 456 P. 2d 21; and *Kissick v. Salina Manufacturing Co., Inc.*, 204 Kan. 849, 466 P. 2d 344. Respondent city, on the other hand, says that the new (1974) law controls, that this was its position before the district court and was the basis for the court's decision.

The amendments to 44-512a, enacted in 1974, effected significant changes. (*Kelly v. Phillips Petroleum Co.,* 222 Kan. 347, 566 P.2d 10.) Under the former law, failure by the employer to pay compensation when due, as provided in the act, caused "the entire amount of compensation awarded, agreed upon or adjudged" to become immediately due and payable. In place of acceleration of the entire award, the new act causes only past due compensation to become immediately due and payable and provides for certain civil penalties to be assessed by the director against the employer. The new act also provides for the allowance

of reasonable attorneys' fees incurred in connection with a 44-512a action. In its remarks from the bench and in the formalized journal entry of its decision, the trial court mentions K.S.A. 44-512a, but it does not specifically explain whether the old or new law was relied upon. The court overrruled claimant's motion for summary judgment for the sum of $17,104.66, which, apparently, was filed pursuant to the old 44-512a. The court did sustain the motion in part, as to past due compensation. The court ruled:

". . . [I]nsofar as it relates to the compensation due for the ten weeks prior to the Director's award entered on December 8, 1975, and the following 17.3 weeks to the date of hearing, April 8, 1976, pursuant to K.S.A. 44-556. Said judgment should be for the total of 27.43 weeks at the rate of $42.90 per week, as set forth in the Director's award, or a total sum of $1,176.75."

The trial court's decision in this regard is in line with the provisions of 44-512a (1974 Supp.) the new act. Whether the trial court failed to cite the proper statutory supplement in its journal entry, or even if it might have attempted to apply the former 1961 statute and then misconstrued it, is of no consequence if its decision achieved the correct result. Our long standing rule in this regard was restated in the recent case of *Kirkpatrick v. Seneca National Bank*, 213 Kan. 61, 515 P. 2d 781, wherein we held:

"The judgment of a trial court is to be upheld, if it is correct, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision." (Syl. 3.)

See, also, *Owens v. City of Bartlett*, 215 Kan. 840, 528 P. 2d 1235; and *Pierce v. Board of County Commissioners*, 200 Kan. 74, 434 P.2d 858.

The claimant vigorously argues that the new act affects his substantial rights and to give it effect here would be retrospective application. Neither argument of claimant can be maintained. It has long been settled law in this jurisdiction that the basic thrust of 44-512a is remedial in nature. Moreover, application of the 1974 amendments to this case is not retrospective.

The nature and purpose of 44-512a in a context similar to that presented herein was first considered in *Ellis v. Kroger Grocery Co.*, 159 Kan. 213, 152 P. 2d 860. Ellis had been injured in 1942 and the award of the commissioner (now director) had been finalized on March 23, 1943. The new law (44-512a) became effective March 23, 1943. The respondent in the *Ellis* case did not

pay any compensation, and in November of 1943 a demand letter was sent pursuant to the new statute. Respondent did not pay in response to the demand letter and claimant filed an action under the then new 44-512a statute. The trial court applied the new statute and rendered a lump sum judgment for claimant as prayed for. The respondent appealed. In affirming the judgment on appeal the *Ellis* court identified the issues in terms identical to those presented in the case at bar. The court said:

". . . The basic legal questions involved are, first, whether the 1943 lump-sum-judgment law was intended to apply to a judgment previously rendered but in which default in the payment of compensation installments was made after the enactment of the new law, and second, if the new law is held to be applicable is it retroactive in character and therefore invalid on the ground it interferes with vested rights." (pp. 216-217.)

Further in the opinion the court declared there are no vested rights in any remedy citing *Dobson v. Wilson & Co., Inc.,* 152 Kan. 820, 107 P. 2d 676.

After deciding that 44-512a was procedural and remedial in nature the *Ellis* court addressed the matter of prospective-retrospective application. The court reasoned that the remedy under 44-512a did not become operative until the act of default on the part of respondent which occurred after the effective date of the new act. Thus, application thereof was prospective. In this connection the court concluded:

". . . In concluding the new law was intended to apply to installment payments which became due and payable after the effective date of the new law we are not applying the new law retroactively but prospectively with respect to defaults in the payment of such installments." (pp. 217-218.)

In the case at bar the claim for compensation was filed after July 1, 1974. The examiner's award was not entered until November 1975 and the act of default did not occur until 1976. Following the rationale that the time of default determines the remedy applicable, K.S.A. 1974 Supp. 44-512a must be applied to this case.

The principle that 44-512a is remedial in character and intended to supplement existing remedies, as enunciated in *Ellis,* has been recognized in numerous subsequent cases. (See, *Kraisinger v. Mammel Food Stores,* 203 Kan. 976, 457 P. 2d 678; *Owen v. Ready Made Buildings, Inc.,* 181 Kan. 659, 313 P. 2d 267; and *Babcock v. Dose,* 179 Kan. 298, 293 P. 2d 1007.)

In the recent case of *Eakes v. Hoffman-LaRoche, Inc.*, 220 Kan. 565, 552 P. 2d 998, this court found that the 1974 amendment to K.S.A. 44-528 (*a*) [now 1976 Supp.], which gave a workman a right to review where none existed under the previous law, affected vested or substantive rights and could not be applied to a case where, at the time the amendment became effective, the award had been finally adjudicated. However, the different effect of remedial or procedural amendments to the act was pointed out in *Eakes,* by our holding:

"Amendments to the workmen's compensation act which are merely procedural or remedial in nature, and which do not prejudicially affect substantive rights of the parties, apply to pending cases." (Syl. 2.)

In the case at bar, claimant also argues that K.S.A. 1974 Supp. 44-505 (c) [now 1976 Supp.] supports his position. The statute reads:

"(*c*) This act shall not apply in any case where the accident occurred prior to the effective date of this act. All rights which accrued by reason of any such accident shall be governed by the laws in effect at that time."

The answer to claimant's arguments in this regard is that no rights vested or accrued to him under 44-512a until after service of his demand letter and the respondent's subsequent default. Respondent's default occurred long after the effective date of the new amendment.

While applicability of the 1974 amendments to 44-512a was not the critical issue in *Kelly v. Phillips Petroleum Co.,* supra, we noted, in considering the sufficiency of a demand letter dated August 23, 1974, that the new act was then applicable to a 44-512a action even though the accident occurred in 1968 and compensation proceedings were commenced in 1969. In *Kelly* all of the compensation, in question, was past due, thus, application of the new act did not affect the result.

In points 1 and 2 in his appeal in the 44-512a action, claimant contends the trial court erroneously applied the old law in its decision. In view of our holding that the 1974 amendments are applicable, claimant's arguments and response thereto by respondent need not be considered.

In point 3, claimant claims error in the consolidation of the two actions for hearing before the trial court. Claimant fails to show how he was prejudiced nor does he cite any authority in support

of his position. While a 44-512a action is separate and distinct from a compensation proceeding, the two actions, when stemming from the same accidental injury, are interrelated. It is frequently the case that a 44-512a judgment supersedes the director's award and will render moot an appeal in the compensation action. (See, *Kelly v. Phillips Petroleum, Co.*, supra; and *Griffith v. State Highway Commission of Kansas*, 203 Kan. 672, 456 P. 2d 21.) In *Kelly* this court ordered consolidation of the two cases on appeal. In the absence of a showing of actual prejudice we see no reason why the two actions should not be consolidated; in fact, it would appear to be the better practice. In finding no error in consolidation we are not relying upon K.S.A. 60-242 (*a*) authorizing consolidation in civil actions. The rule is firmly established that the Workmen's Compensation Act is complete and exclusive within itself in establishing procedures covering every phase of the right to compensation, and such procedures are not subject to supplementation by rules borrowed from the Code of Civil Procedure. (*Knoble v. National Carriers, Inc.*, 212 Kan. 331, 510 P. 2d 1274; and *Kissick v. Salina Manufacturing Co., Inc.*, supra.)

We turn now to claimant's contentions in his appeal from the trial court's ruling in his compensation case. From the testimony heretofore recited the conflict in the medical testimony readily appears. The principal point in dispute is whether claimant suffered injury to his lower back.

This court's limited scope of review in workmen's compensation has long been established. Under K.S.A. 44-556 (*c*) [now 1976 Supp.] appellate jurisdiction is limited to questions of law. The question whether a district court's judgment is supported by substantial evidence is one of law. (*Reichuber v. Cook Well Servicing*, 220 Kan. 93, 551 P. 2d 810; and *Jones v. City of Dodge City*, 194 Kan. 777, 402 P. 2d 108.) If, when viewed in the light most favorable to the party prevailing below, there is substantial evidence to support the district court's factual findings, this court is bound by those findings and we have no power to weigh the evidence or reverse the final order of the court. (*Reichuber v. Cook Well Servicing*, supra; and *Day and Zimmerman, Inc. v. George*, 218 Kan. 189, 542 P. 2d 313, and cases cited therein.) The term "substantial evidence," when applied to the workmen's compensation cases, means evidence possessing something of

substance and relevant consequence, or evidence which furnishes a substantial basis of fact from which the issues presented can be reasonably resolved. (*Drake v. State Department of Social Welfare*, 210 Kan. 197, 499 P. 2d 532.) Although this court may feel the weight of the evidence, as a whole, is against the findings of fact, made by the district court, it may not disturb those findings if they are supported by substantial competent evidence. (*Jones v. City of Dodge City*, supra.)

After examining the evidence in the instant case, the trial court found that claimant had no back injury which could be related to the accident. Concerning the medical testimony, the court observed:

". . . I cannot place very much weight on the testimony of Dr. Thompson at all. I don't think he had the facts. I don't buy his conclusions. His testimony in general just seems speculative to me. The court finds that the claimant made no complaints of any back injury or back pain until he saw Dr. Thompson. . . ."

Dr. Kneidel was the treating physician. He saw claimant every day while he was in the hospital and examined him at least three times after his release from the hospital. He found degenerative changes in claimant's lumbar spine, but since there were no objective symptoms, no treatment was prescribed or given. Dr. Kneidel further explained that the changes and osteophyte spur formations found were not caused by the accident as they take at least six to nine months to form and they appeared in x-rays taken in August of 1974, less than two months after the accident. Dr. Kneidel did feel that claimant was disabled, but attributed it to alcoholism. Dr. Kneidel noted that claimant sustained an episode of delirium tremens while hospitalized and that he repeatedly smelled of alcohol during subsequent office visits. Dr. Kneidel was positive in his medical opinion that claimant had suffered no injury to his lower back.

Dr. Thompson, on the other hand, saw claimant only once. He made definite statements concerning his disability and the causes, but retracted to some extent by admitting that he had not examined x-rays taken in the hospital and did not know whether claimant's spine condition was of long or short term duration. Dr. Thompson also admitted that he could not specifically relate the spurring condition, which he found, to claimant's accident on June 10, 1974.

It is the prerogative and duty of the trial court to consider and weigh every part of a witness's testimony and to give it such credence and weight as in the court's judgment it deserves. It is not for an appellate court to say what testimony should be given credence or what evidence should be disbelieved. (*Deines v. Greer*, 216 Kan. 548, 532 P. 2d 1275; and *Vocke v. Eagle-Picher Co.*, 168 Kan. 708, 215 P. 2d 185.) The testimony of Dr. Kneidel is sufficient in itself to provide the substantial evidence required to support the trial court's findings. (See, *Scott v. Day and Zimmerman, Inc.*, 215 Kan. 782, 529 P. 2d 679.)

It follows that the judgment of the trial court as to both cases must be affirmed.