No. 50,419

THE FARMERS STATE BANK OF OAKLEY, *Appellee*, v. PAUL A. COOPER, JR., *Appellant*, MICHAEL P. COOPER and GEORGIA L. COOPER, *Third Party Defendants.*

(608 P.2d 929)

Opinion filed April 5, 1980.

*Kris L. Arnold,* of Roeland Park, argued the cause and was on the brief for the appellant.

*James A. Spencer,* of Spencer & Spencer, P.A., of Oakley, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendant, Paul A. Cooper, Jr., from judgment entered against him in the Logan district court in an action brought by Farmers State Bank of Oakley on a past-due promissory note. The issues are (1) whether the note sued upon was subject to the Uniform Consumer Credit Code, K.S.A. 16a-1-101 *et seq.*; (2) whether defendant is entitled to recover civil penalties, costs, and attorney's fees; and (3) whether the bank unjustifiably impaired the collateral by failing to perfect its security agreement, and by allowing the removal of the collateral from the State of Kansas. In determining the last of these issues, we must also determine whether the defendant is an accommodation party or a principal maker of the note.

The factual background is necessary to an understanding of the issues. In July, 1971, Dr. Michael P. Cooper, son of defendant Paul A. Cooper, Jr., moved with his wife Georgia to Oakley, Kansas. Michael, a chiropractor, intended to establish a practice in Oakley. He approached the bank for a loan in order to purchase equipment and remodel his office, rented from the bank and located on an upper floor of the bank building. The bank committed a line of credit of five thousand dollars. The president of the bank testified that when the original commitment was made, the professional equipment, household items, and automobile that were offered as security were not sufficient to completely secure the loan; therefore Paul Cooper's signature was necessary to protect the bank for the total amount.

The first promissory note in the amount of three thousand dollars was executed on August 12, 1971. It was signed by

Michael P. Cooper, Georgia L. Cooper, and Paul A. Cooper, Jr. The note was secured by a security agreement of the same date, designating all equipment, instruments, and furnishings in the office, and all household goods located in the Michael Cooper residence, and a 1967 Chevrolet, as security. Michael P. Cooper and Georgia Cooper, together with William B. Griffith as agent for the bank, signed the security agreement. The security agreement was never perfected.

Four additional notes for amounts under one thousand dollars, signed only by Michael P. Cooper, were made in subsequent months. The five notes were consolidated on February 12, 1972, when a note for five thousand dollars, secured by the security agreement of August 12, 1971, was executed. This note was signed by Michael, Georgia, and Paul Cooper. This note was renewed by the execution of new notes signed by all three persons on August 12, 1972, February 12, 1973, December 1, 1973, and July 1, 1974. Some payments of principal and interest were made; the face amount of the final renewal note, due January 1, 1975, was $4,550.63. The majority if not all of the payments on the notes were made by defendant Paul Cooper. The final note is on a form substantially different from the earlier notes; it includes provisions for applicability of the UCCC.

Michael's chiropractic practice did not prosper. During 1975 he moved from Oakley to the State of Washington. It then appeared that Dr. Cooper had a splendid opportunity in Washington, and the bank was hopeful that his practice would prosper there enabling him to satisfy the note. The bank gave permission to Dr. Cooper to remove the collateral to Washington. The move was not financially successful, and Dr. Cooper returned to Oakley for a short time during 1976. He then moved to Macksville, Kansas, and later returned to his home in Shawnee, Kansas. He has not practiced chiropractic medicine since his return to Kansas. Dr. Cooper disposed of some of the collateral; the only items the defendant has seen in his recent possession are a hand-held vibrator, a sewing machine, and the automobile. The record does not indicate any attempt of the bank to obtain payment from Dr. Cooper or to foreclose on the remaining collateral.

On October 26, 1977, the bank filed suit against defendant Paul Cooper for the balance due on the note plus accrued interest. Paul Cooper filed an answer and counterclaim, and later filed a third-

party petition against his son, Dr. Michael Cooper, and his son's wife, Georgia, for indemnity in the event a judgment is entered against Paul Cooper and in favor of the bank. Neither Michael nor Georgia Cooper have answered or otherwise appeared in this action.

The trial court made findings of fact substantially similar to the foregoing recitation, and then made conclusions of law as follows:

"1) Under K.S.A. 16a-1-301(14)(ii), a business loan is not a consumer loan. Under K.S.A. 16a-1-109, the parties may make such a loan subject to the UCCC by agreement in writing signed by both parties. The Court would conclude that the parties did not intend the renewal note (Plaintiff's exhibit 10) to be subject to the UCCC for the following reasons:

(a) The loan was a business loan before the passage of UCCC and this was merely a renewal note.

(b) Plaintiff's exhibit 10 is not signed by the bank as required to bring 16a-1-109 into play.

(c) The typed-in comment 'business loan' in the blank for a finance charge controls over the printed form language relating to the UCCC.

"2) The Court does not feel that the plaintiff bank's failure to perfect its security in the collateral constitutes unjustifiable impairment of recourse or collateral under K.S.A. 84-3-606 in this case for the following reasons:

(a) The security in the collateral was unperfected in 1971, and this fact was easily ascertainable by defendant before he signed the 1974 note.

(b) The plaintiff never misled the defendant by promises that it would protect him or look to the collateral first or perfect its security. It should have been obvious to the defendant by 1974 that the plaintiff was looking primarily to his signature rather than the aging collateral for the payment of this loan.

(c) The defendant was in a better position than plaintiff to know the whereabouts of 3rd party defendants and to take steps to protect his right of recourse under K.S.A. 84-3-415.

"For the above and foregoing reasons judgment is rendered for the plaintiff and against the defendant in the sum of $4,550.63 with interest at the rate of 9% from and after July 1, 1974. The defendant is given a right of recourse and a judgment over against the 3rd party defendants in the same amount and at the same rate of interest."

Judgment was entered in accordance with those conclusions. This appeal followed.

The first issue is whether the final renewal note, the one forming the basis for this lawsuit, is subject to the provisions of the Uniform Consumer Credit Code, K.S.A. 16a-1-101 *et seq.* K.S.A. 16a-1-109 provides in substance that the parties to loans which are not consumer credit transactions may agree in writing to the application of the act. The trial court concluded that it did not apply. We concur.

There is no dispute that the original loan was for a business purpose and that the original and the first several renewal notes were not subject to the UCCC. "A renewal signifies the substitution in place of one engagement of a new obligation on the same terms and conditions; that is, the re-establishment of a particular contract for another period of time." 11 Am. Jur. 2d, Bills and Notes § 307. We adopted that view in *Fourth National Bank v. Hill,* 181 Kan. 683, 695, 314 P.2d 312 (1957).

Most of appellant's arguments rely upon finding the note unambiguous and therefore not subject to construction. Examination reveals substantial ambiguity. On the one hand, the printed portion of the note states that the UCCC applies. On the other hand, the note is a renewal of a business note not previously subject to the UCCC, the finance charges are not entered, and the total number of payments is omitted. In addition, the interest rate specified does not exceed that allowable outside the UCCC; and the typed words "business loan" control over the printed form under K.S.A. 84-3-118. Even more conclusive is the unrebutted testimony of William B. Griffith, an officer of the bank, that the loan was for business purposes and outside the UCCC, and that the bank used this form for both consumer loans, within the UCCC, and for business loans which were not within the act. The finding of the trial court that the parties did not intend that the UCCC apply is supported by substantial competent evidence. The note considered in *Rosedale State Bank & Trust Co. v. Stringer,* 2 Kan. App. 2d 331, 340, 579 P.2d 158 (1978), was by agreement made subject to the UCCC, and an interest rate not otherwise permitted by law was charged. *Rosedale* is distinguishable from the case at hand. We conclude that the trial court was correct in its conclusion that the parties did not intend the renewal note to be subject to the UCCC.

The next issue is whether the trial court erred in failing to award defendant statutory penalties and attorney's fees under K.S.A. 16a-5-201(8) for the bank's failure to comply with the UCCC. Since we have held that the note is not governed by the UCCC, this issue was correctly decided. By motion filed with this court, and presented during oral argument, appellant seeks allowance of attorney's fees in connection with this appeal. Since the basis for fees is the UCCC, appellant's application for attorney's fees for appellate services is denied.

The third and determinative issue is whether the bank, by failing to perfect its security agreement and by allowing the removal of the collateral from Kansas, unjustifiably impaired the collateral, thus discharging the defendant, an accommodation party. Defendant claims discharge under K.S.A. 84-3-606(1)(*b*), which reads:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

. . . .

"(*b*) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

The discharge provisions of that statute apply only to signers who occupy the position of sureties, such as accommodation parties. The official UCC Comment to K.S.A. 84-3-606 states that the section has been reworded to make it clear that:

"1. The words 'any party to the instrument' remove any uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are 'secondarily liable,' but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so."

Another statute, K.S.A. 84-3-415(1), comes into play, for we must first determine whether under that section defendant is an accommodation party. K.S.A. 84-3-415(1) provides:

"(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it."

The official UCC Comment to K.S.A. 84-3-415 reads in applicable part:

"1. Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs."

On the original note defendant was designated as "co-signor." He was designated in successive notes, on the line below his signature, as "co-signor" or "co-maker." On the last three notes there was no designation. The undisputed evidence is that the bank required the defendant's signature at the time of the original

commitment because the collateral offered was not of sufficient value to secure the loan. Dr. Cooper called the defendant and told him "that he wanted my signature on a note so he could get the practice started." The note was signed by Dr. and Mrs. Cooper at the bank, then was mailed to the defendant who signed and returned it. The renewal notes were executed in similar fashion. There is no evidence that defendant received any of the proceeds of the loan.

The trial court made no specific finding that defendant was an accommodation party; however, it made a tacit finding that he was such a party by its consideration of the applicability of K.S.A. 84-3-606, and by granting to the defendant as third-party plaintiff a judgment over against Dr. Cooper and his wife, third-party defendants, for the full amount of the judgment recovered by the bank against the defendant. The legal basis for the judgment over is the surety's right of action against the party accommodated; had the defendant been found jointly liable as co-maker, his right of recourse would not have been for the entire amount of the judgment.

"The intention of the parties is the significant element in determining whether a party is an accommodation party and the identity of the party accommodated." 2 Anderson, The Uniform Commercial Code § 3-415:9 (2d ed. 1971). Except as to holders without notice, accommodation status may be established by parol evidence when the note does not disclose the party's status. K.S.A. 84-3-415(3).

Two primary factors are indicative of accommodation status: (1) no benefits from the proceeds of the instrument are received by the accommodation party, and (2) the signature is needed by the maker to acquire the loan. See annotation, *Who is Accommodation Party,* 90 A.L.R.3d 342 (1979). The "proceeds" and "purpose" tests are followed and applied in *Stockwell v. Bloomfield State Bank,* _____ Ind. App. _____ , 367 N.E.2d 42 (1977), and *Lasky v. Berger,* 536 P.2d 1157 (Colo. App. 1975). Applying those tests, we conclude that defendant's status was that of an accommodation party when the first note was signed.

The trial court's conclusions of law might be taken to indicate that defendant's status changed from accommodation party to that of a jointly liable maker on the final note. We do not think this is so. "When it is shown that one indorser signed the original

note to accommodate a subsequent indorser, it will be concluded that this intent governed their signing of a renewal note in a similar manner, in the absence of proof that the intent did not continue over to the renewal note." 2 Anderson, The Uniform Commercial Code § 3-415:7. The *Stockwell* court examined the whole series of transactions when suit was brought on a renewal note and concluded accommodation status continued. *Stockwell v. Bloomfield State Bank,* 367 N.E.2d at 43-45. See also *Tampa Bay Bank v. Loveday,* 526 S.W.2d 480 (Tenn. App. 1974); *Schafran v. Harris,* 17 N.C. App. 500, 194 S.E.2d 864, *cert. denied* 283 N.C. 666 (1973); *Niebergall v. A.B.A. Contracting & Supply Co.,* 24 App. Div. 2d 799, 263 N.Y.S.2d 589 (1965). Pre-U.C.C. Kansas case law also adheres to the rule that renewal of a note continues the liabilities as they existed under the original note. In *Fourth National Bank v. Hill,* 181 Kan. 683, 314 P.2d 312 (1957), Justice (later Chief Justice) Fatzer, writing for a unanimous court, said:

"This court has consistently held that where a note is given merely in renewal of another and not in payment thereof, the renewal does not extinguish the original debt nor in any way change the debt except by postponing time of payment, and, as a general rule, the holder is entitled to the same rights and remedies as if he were proceeding on the original note." p. 695.

We have reviewed the several renewal notes, and the evidence pertaining to them. Although the bank had several conversations with the defendant, there is no indication that there was an agreement to change his liability on the note. The discussions were "general conversations"; defendant at no time agreed that his liability or status be changed, and the bank made no request for or suggestion of a change. Upon the record before us we conclude that defendant continued to be an accommodation party, and was such on the final renewal note.

Is defendant released from part or all of his liability because the bank failed to perfect its security agreement and Dr. Cooper has since sold a part of the collateral? Defendant contends that the failure of the bank to perfect its security agreement constituted an unjustifiable impairment of collateral. A review of the principles involved may be helpful.

An unperfected security agreement is valid and effective between the parties to the agreement according to its terms. K.S.A. 84-9-201; and see K.S.A. 84-9-203. Ordinarily, a financing statement must be filed to perfect it. K.S.A. 1979 Supp. 84-9-302.

Except in the circumstances encompassed by K.S.A. 1979 Supp. 84-9-307, a secured party's interest in collateral is prior to that of a purchaser if the security interest is perfected; however, if the interest is not perfected, a buyer for value without knowledge takes free of the security interest. K.S.A. 1979 Supp. 84-9-301(1)(*c*).

Defendant relies on *Redlon v. Heath,* 59 Kan. 255, 52 Pac. 862 (1898). The creditor in *Heath* recorded the mortgage in the wrong county; the error was not discovered until other mortgages, exceeding the total value of the property, had been properly filed of record. We noted in that case that the evidence showed that the mortgaged land was of sufficient value to have paid prior encumbrances as well as the amount of the improperly filed one, but that other mortgages, later filed and "sufficient in amount to absorb the entire property, took precedence and swept his security away." We held that the person who signed the note as a surety or accommodation party was released from liability because of the failure of the creditor to record the mortgage in the right county and thus protect the collateral.

The U.C.C. has codified this rule in K.S.A. 84-3-606(1)(*b*) which provides for discharge of any party *to the extent* that without such person's consent the holder unjustifiably impairs collateral. It is clear from the statute that the release is only *pro tanto,* and the cases so hold. See *Langeveld v. L.R.Z.H. Corporation,* 74 N.J. 45, 376 A.2d 931, 22 U.C.C. Rep. 106 (1977), and *Mikanis Trading Corp. v. Block,* 59 App. Div. 2d 689, 398 N.Y.S.2d 679 (1977). The failure of the holder of a security agreement to perfect it, which failure results in a loss of available collateral to an accommodation party, is an impairment of the collateral. Here, the sale of collateral was wrongful, if not criminal (see K.S.A. 21-3734), and the failure of the bank to perfect its security agreement has resulted in a loss of some of the collateral, so far as the defendant is concerned. Part of the collateral is gone, and presumably is not subject to the security agreement.

Should the defendant be released from liability? We think not. No evidence of the value of the missing collateral, or of the value of the remaining collateral, was offered. No such evidence is contained within the record.

K.S.A. 84-3-307(2) provides:

"When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

The official U.C.C. comment to this section reads in part:

"2. Once signatures are proved or admitted, a holder makes out his case by mere production of the instrument, and is entitled to recover in the absence of any further evidence. *The defendant has the burden of establishing any and all defenses,* not only in the first instance but by a preponderance of the total evidence." (Emphasis supplied.)

The bank did not know until trial of the sale or disposal; it did not know when, to whom, or for what price or on what terms it was sold or transferred. Defendant had all this evidence available; his son, the third-party defendant, had the information; defendant knew of his son's whereabouts but the bank did not; defendant could have called his son as a witness had he wished to do so.

We conclude that the burden of proof was upon defendant to establish the extent to which the collateral was impaired. See *Christensen v. McAtee,* 256 Or. 333, 473 P.2d 659, 8 U.C.C. Rep. 66 (1970); *Langeveld v. L.R.Z.H. Corporation,* 74 N.J. 45, 376 A.2d 931 (1977); and *Telpner v. Hogan,* 17 Ill. App. 3d 152, 308 N.E.2d 7 (1974). Having failed to establish the extent of the impairment, defendant is liable for the full amount of the note.

The judgment of a trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *Crow v. City of Wichita,* 222 Kan. 322, Syl. ¶ 1, 566 P.2d 1 (1977); *Belger Cartage Serv., Inc. v. Holland Constr. Co.,* 224 Kan. 320, 582 P.2d 1111 (1978).

The judgment of the trial court in this case was correct. It is affirmed.