56,731

LEROYCE S. CARR II, *Claimant-Appellee,* v. UNIT NO. 8169/MID-WESTERN DISTRIBUTION, *Respondent-Appellant,* and EXCALIBUR INSURANCE COMPANY, *Insurance Carrier-Appellant.*

(703 P.2d 751)

Opinion filed July 26, 1985.

*Arthur W. Douville,* of Alder & Nelson, of Overland Park, argued the cause and was on the brief for the appellants.

No appearance for appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by an employer (Unit No. 8169/Midwestern Distribution) and its insurer (Excalibur Insurance Company) (appellants) from a workers' compensation award to an employee, Leroyce S. Carr II (claimant-appellee). The administrative law judge granted an award to claimant for 15% permanent partial disability due to his injuries and for medical treatment, but denied payment of a hospital bill which claimant asserted was incurred due to an overdose of pain killers which had been prescribed to him for his injuries. The Director of the Division of Workers' Compensation adopted the award, but amended it to include payment of the hospital bill. The District Court of Shawnee County affirmed the award as

amended by the Director. The Court of Appeals, in an unpublished opinion dated January 17, 1985 reversed the district court as to the award of any permanent partial disability, but affirmed the award of medical treatment and the payment of the hospital bill.

The appellants petitioned this court for review. Appellants claim it was error for the court to allow the award of medical treatment and payment of the hospital bill because, due to misleading and deceptive representations made by the claimant, there was not substantial competent evidence to support the award. We granted review.

On January 6, 1981, claimant received injuries arising out of and in the course of his employment with Midwestern Distribution as a truck driver. The accident occurred when the truck in which claimant was riding turned on its side after striking a cow. Claimant suffered a fractured sacrum, a fracture of the right eighth rib, injury to his right wrist (either a fracture or a sprain on top of a previous fracture), some musculoligamentous injury generally to the back, arms and legs, as well as multiple contusions and abrasions. Claimant received voluntarily paid temporary disability from the date of his accident through July 27, 1981.

In March of 1981, claimant filed a written claim for workers' compensation. A preliminary hearing was held on October 20, 1981, wherein claimant testified he could not depress his right ankle to perform the function of accelerating and braking, and that he was unable to shift gears with his right wrist. The special administrative law judge granted temporary total disability compensation and ordered appellants to pay at the rate of $139.60 per week from September 15, 1981. The appellants were also ordered to pay claimant's medical expenses until further court order.

At the regular hearing, held on May 25, 1982, claimant carried a cane and continued to maintain that his injuries rendered him unable to shift gears or operate the accelerator pedal of a truck. He stated he did not believe he could pass a physical examination to obtain a commercial license in order to drive a truck. He stated further he was unable to work for any trucking company.

In October of 1982, it was discovered that the claimant had been misrepresenting his inability to work. When claimant was

deposed, he admitted that he had gone to work driving a truck for a Texas company in July of 1981—the same month his voluntarily paid workers' compensation had ended—until January of 1982, at which time he was laid off. He testified that he only drove short runs of 116 miles and that he was in pain the entire time he was driving. He said after he had been driving for about 40 miles his foot would start shaking. Claimant acknowledged that he had continued to see his doctor during this time, but did not tell him he was back working full time. He said he had lied in the earlier hearing because he had been in desperate need of money to support his family. He emphasized that he had never lied about how much pain he had suffered.

Claimant also testified he had renewed his commercial driver's license in September of 1981. He assumed he represented that he was in good physical condition when he filled out his application for renewal.

In June of 1982, claimant began driving a truck intermittently for Joe Lykes. During the time claimant worked for Mr. Lykes, according to Lykes' testimony, claimant never used a cane or gave any indication of physical disability. On October 1, 1982, claimant made a credit application and represented that he had worked for Joe Lykes as a truck driver for three years, and that he made approximately $2,000 a month. The purpose of the loan was to cover claimant's expenses until he received his workers' compensation.

On the basis of the foregoing testimony, temporary total disability was terminated effective October 25, 1982.

Claimant next testified at a hearing held on January 14, 1983. He claimed that he continued to suffer pain from his injuries. He testified that in October of 1982, he took an overdose of pain pills, which resulted in a rather costly hospital bill. Claimant stated as follows:

"I was in pain, and I took two or three of them, and it didn't seem to help, so I took four or five more, I guess. I don't know. I had to go to the hospital, to the Lubbock General, and they've got a bill for $2,142.25 with the ambulance."

Claimant introduced the hospital bill, but the administrative law judge did not admit it due to lack of foundation. Claimant's testimony about the bill and why it was incurred was allowed to stand despite refusal to admit the bill itself.

Following this hearing, in March of 1983, the administrative

law judge found claimant to be 15% permanently partially disabled, but totally disallowed the October 21, 1981, order for temporary total disability compensation and ordered that the appellants be reimbursed from the Workers' Compensation Fund. In regard to claimant's medical expenses, the administrative law judge found:

"Notwithstanding the fact that claimant returned to work, it is found that claimant was in need of medical treatment as provided by all of claimant's doctors, including Dr. Gordon. It does not appear from the evidence that any of the medical treatment claimant received was unwarranted, unreasonable or unnecessary. Therefore, those medical bills which have been introduced into evidence should be paid by the respondent . . . . This does not include the medical expenses for claimant's hospitalization of October 25, 1982, due to his alleged overdose. There is insufficient evidence to conclude that this treatment was an ordinary and necessary result of claimant's accident of January 6, 1981."

The Director of Workers' Compensation modified the order, finding that the excess temporary disability benefits should have been deducted from the balance of compensation due claimant rather than reimbursed from the Workers' Compensation Fund. The Director further modified the order as to the hospital bill, stating: .

"The Director finds that the medical expenses for claimant's hospitalization of October 25, 1982, should be paid as ordinary medical expenses in this claim. The hospitalization was due to an accidental overdose by claimant, according to claimant's testimony, and is therefore compensable. This type of medical expense would be the same if claimant had incurred additional expenses due to a fall because of lack of stability resulting from the accident. Additional or further injuries caused in obtaining medical treatment are commonly a part of workers' compensation matters. (See *Tompkins v. Rinner Construction Co.,* 194 Kan. 278[, 398 P.2d 578 (1965)].)"

The District Court of Shawnee County, in a de novo proceeding, adopted and approved the award of the administrative law judge as amended by the director.

Appellants appealed to the Court of Appeals, alleging the district court erred in awarding 15% permanent partial disability compensation, the payment of claimant's medical treatment, and the payment of claimant's bill from Lubbock General Hospital incurred as a result of his overdose of pain medication. The appellants argued that because the claimant had perjured *some* of his testimony, *all* of his testimony to the court and statements to his treating physician were rendered unreliable and, there-

fore, there was not substantial competent evidence to support the awards.

The Court of Appeals reversed the lower court as to the award of permanent partial disability compensation. The court noted that the test for determining permanent partial general disability is the extent to which the injured worker's ability has been impaired to engage in work of the same type and character he was performing at the time of the injury. *Ploutz v. Ell-Kan. Co.,* 234 Kan. 953, 676 P.2d 753 (1984). The Court of Appeals found that since the claimant had been able to return to his old line of work as a truck driver, there was not substantial competent evidence to support the award.

The Court of Appeals affirmed the lower court as to the award of medical treatment and payment of the Lubbock General Hospital bill of $2,142.25. The court noted that the only evidence of untruthfulness in claimant's testimony went to the issue of permanent partial disability. Since there was no evidence contradicting claimant's testimony as to the reasonableness and necessity of medical treatment, or his reason for being in the Lubbock General Hospital, the court considered the testimony to be true. Accordingly, the court found there was substantial competent evidence to support the awards.

The appellants, in their petition for review, argue that the medical treatment was not reasonable and necessary because the claimant had misled his physician through deception and, therefore, the award is not supported by substantial competent evidence. They further argue that claimant's testimony about the Lubbock General Hospital bill was self-serving and, therefore, did not constitute substantial competent evidence to support the award.

The appellate jurisdiction of this court in workers' compensation cases is confined to reviewing questions of law. K.S.A. 1984 Supp. 44-556(c). Whether a district court's judgment is supported by substantial competent evidence is a question of law, rather than a question of fact. *Reichuber v. Cook Well Servicing,* 220 Kan. 93, 95, 551 P.2d 810 (1976). In determining whether there is substantial competent evidence to support the district court's findings, this court will look only to the evidence in the light most favorable to the prevailing party below. It is the function of the district court to weigh the evidence; it is not for this court to

say what testimony should be given credence or what evidence should be disbelieved. *Vocke v. Eagle-Picher Co.*, 168 Kan. 708, 215 P.2d 185 (1950). If, after viewing the evidence in the light most favorable to the prevailing party below, this court finds there is substantial evidence to support the district court's findings, this court is bound by those findings. *Reichuber v. Cook Well Servicing*, 220 Kan. at 95.

In *Reichuber*, 220 Kan. at 95-96, this court quoted favorably from *Silvers v. Wakefield*, 176 Kan. 259, 260, 270 P.2d 259 (1954), wherein it was stated:

"Under G.S. 1949, 44-556, appellate jurisdiction of this court in compensation cases is confined to reviewing questions of law only. In doing so, it is necessary to determine whether the record contains any evidence which tends to support the judgment rendered, and in so considering, this court is required to view all testimony in the light most favorable to the prevailing party below. If when so considered, the record contains any evidence which supports the trial court's judgment, that judgment must be affirmed; being conscious at all times of the fact that this court has little concern with disputed questions of fact in ordinary lawsuits and none whatever in workmen's compensation cases, except to ascertain whether the record contains any evidence which on any theory of credence would justify the trial court's finding or conclusion of fact."

In the case at bar, the appellants first challenge whether there was substantial competent evidence to support the award for claimant's medical treatment.

Under K.S.A. 44-510(a) it is the duty of the employer to provide for such medical treatment "as may be reasonably necessary to cure and relieve the employee from the effects of the injury." The appellants allege that the claimant deceived everyone, including his own physician, into believing he was more seriously injured than he in fact was and, therefore, he received extraordinary, unnecessary medical treatment including brain, bone and body scans, and cancer tests. Dr. Gordon, claimant's treating physician, stated at his deposition that the results of the various tests performed on claimant were consistent with his complaints and the injuries he suffered.

The doctor further stated, "I am still convinced that he was injured within reasonable medical probability. . . I really think he was hurting. I still do." Dr. Gordon explained the necessity of the bone scans and cancer tests since cancer symptoms can mimic injuries from trauma.

Appellants argue that claimant intentionally deceived both the

court and his treating physician and, therefore, neither his testimony nor Dr. Gordon's testimony were reliable and should not have been considered by the district court. However, appellants have failed to prove the claimant's statements regarding his need for medical treatment were untruthful. Appellants did show that claimant had lied about his ability to work. However, that particular misrepresentation involved only the propriety of the award of permanent partial disability.

Moreover, the appellants have failed to present evidence contradicting claimant's evidence regarding the necessity of the medical treatment rendered prior to the overdose of pain pills taken by the claimant.

Having viewed the evidence in the light most favorable to the claimant, we find there was substantial competent evidence from which the district court could have found that the medical treatment which the claimant received prior to the overdose of pain pills was reasonable and necessary. Therefore, we find the district court did not err by awarding medical treatment to claimant.

The appellants further argue the award requiring them to pay the Lubbock General Hospital bill of $2,142.25, occasioned by the claimant's overdose of pain pills, is not supported by substantial competent evidence, since the only evidence about the bill was the "self-serving" testimony of the claimant.

While it is true the appellants failed to present *any* evidence contradicting the claimant's testimony as to the amount of the Lubbock General Hospital bill or the reason for his hospitalization, the claimant's testimony standing alone, assuming it to be truthful, presents not an evidentiary question but a question of law. Does a claimant's hospitalization and medical treatment incurred as a result of his overdose of pain pills, following an injury covered under the Workmen's Compensation Act, constitute treatment which is an ordinary and necessary result of claimant's accident? We answer the question in the negative. Our conclusion is that there is no substantial competent evidence to support the judgment of the trial court or the Court of Appeals granting an award of $2,142.25 for medical treatment and hospitalization at Lubbock General Hospital in Texas to the claimant.

Accordingly, the judgment of the Court of Appeals reversing

the district court as to the award of permanent partial disability compensation is affirmed; the judgments of the district court and the Court of Appeals awarding medical treatment to the claimant for the accidental injury on January 6, 1981 are affirmed; the judgments of the district court and the Court of Appeals awarding medical treatment and hospitalization resulting from the overdose of pain pills taken by the claimant are reversed.