(606 P.2d 484)
No. 51,031

SHELDON GROUNDS, *Claimant, Appellant and Cross-Appellee,* v. TRIPLE J CONSTRUCTION COMPANY, INC., *Respondent and Appellee,* and MARYLAND CASUALTY COMPANY, *Insurance Carrier and Appellee,* and KANSAS WORKMEN'S COMPENSATION FUND, *Appellee and Cross-Appellant.*

Petition for review denied April 11, 1980.

Opinion filed February 8, 1980.

*John S. Seeber,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita, for Sheldon Grounds.

*Douglas L. Baker,* of Pittsburg, for Kansas Workmen's Compensation Fund.

A. J. *Wachter*, of Wilbert, Lassman, Toburen and Wachter, of Pittsburg, for Triple J Construction Company, Inc., and Maryland Casualty Company.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

MEYER, J.: In this workmen's compensation case, the district court affirmed a director's award of 15 percent permanent partial disability. Claimant appeals, contending he should have been awarded 100 percent disability, and the Kansas Workmen's Compensation Fund (Fund) cross-appeals contending it should not have been held solely liable for payment of claimant's award.

Claimant was injured July 5, 1974, while employed by Triple J Construction Company, Inc. (respondent). Respondent's business consisted of pouring concrete basement walls. Respondent is a corporation having three principal stockholders—Howard Johnson, president; Billy Jack, vice president and manager; and Carlton Johnson, an inactive stockholder.

Claimant's injury occurred while he was trying to remove a 96-pound form from a basement, assisted by two other employees. The form struck claimant and injured his back. Claimant missed work the day following the accident, but then returned to work and reported his injury. On September 20, 1974, claimant had a spinal fusion operation performed by Dr. John Lance, an orthopedist. Doctor Lance had treated claimant for back trouble in 1971 and 1972. Prior to claimant's 1974 injury, he had performed manual labor consisting of farming, construction work, and applying fertilizer to fields. Since his injury, claimant performed manual labor; one such job consisting of lifting a maximum of 51 pounds on a limited basis.

At the workmen's compensation hearing, Doctor Lance testified claimant had a functional disability rating of 10 percent. Dr. Roy Coffey, also an orthopedic surgeon, testified claimant had a 15 percent functional disability, and Dr. Ernest Neighbor, another orthopedic surgeon, stated claimant had a 15 percent functional disability.

The examiner found claimant had a 15 percent permanent partial disability; that he had a preexisting physical impairment; that the previous handicap was known by respondent at the time it hired him; and that claimant had been retained by respondent with this knowledge. Additionally, the examiner found that the injury would not have incapacitated claimant "but for" the preexisting handicap. Thus, the Fund was charged with the entire liability to claimant.

The examiner's award was sustained by the director, and the district court sustained the director's order and adopted the examiner's findings as its own.

Claimant argues there is no support in the record for anything but a finding of total disability. He relies on *Reichuber v. Cook Well Servicing,* 220 Kan. 93, 551 P.2d 810 (1976), and *Scott v. Day and Zimmerman, Inc.,* 215 Kan. 782, 529 P.2d 679 (1974), pointing out the factual similarities of these two cases with the testimony of the experts and of claimant here. In essence, claimant asserts the fact he is totally unable to perform the work he was performing for respondent prior to the injury. Thus, claimant contends that according to the *Reichuber* test for determining disability, he is totally disabled.

Respondent and its insurer, Maryland Casualty Company, claim that under either the statutory definition of permanent total disability, K.S.A. 1979 Supp. 44-510c(*a*)(2), or the test of *Reichuber* and *Scott,* claimant is not totally disabled. They argue that the test is not whether claimant can return to the same job as before, as claimant contends, but whether and to what degree claimant's ability has been impaired in the labor market for the same type of work he was capable of performing before the injury.

The Fund contests the finding of sole liability. It disputes the finding that claimant is "handicapped" within the definition of K.S.A. 1979 Supp. 44-566 by taking the position that before a physical condition can constitute a "handicap," the employee must demonstrate he was previously denied employment because of his "handicap." The Fund admits claimant did have some preexisting back problems and that he was injured in 1971 prior to his being employed by respondent, but that since he was never denied employment for physical reasons he did not have a "handicap in obtaining employment" as required by statute. The Fund also argues that even if claimant was handicapped within the meaning of the statute that there is no substantial competent evidence to show he was knowingly hired or retained by respondent as such. In effect, the Fund challenges˜Howard Johnson's general knowledge of claimant's weak back as insufficient to constitute knowledge on either his part or on the part of respondent corporation that claimant was handicapped.

Respondent counters with the assertion that whether or not a claimant is ever denied employment because of his physical

condition is not conclusive; that claimant was in fact "handicapped" as defined by statute; and that Howard Johnson's knowledge was sufficient notice of claimant's previous impairment not only to Howard Johnson, but also, by imputation, to respondent corporation.

We will first consider whether or not the finding that claimant has a 15 percent permanent partial general disability is supported by substantial competent evidence.

Jurisdiction on appeal of compensation cases is limited to a review of questions of law according to K.S.A. 1979 Supp. 44-556(c). Where the findings below are supported by substantial competent evidence, those findings will not be disturbed. *Cody v. Jayhawk Pipeline Corporation,* 222 Kan. 491, 493, 565 P.2d 264 (1977); *Reichuber v. Cook Well Servicing,* 220 Kan. at 96. In determining that matter, all testimony must be viewed in a light most favorable to the party prevailing below. *Day and Zimmerman, Inc. v. George,* 218 Kan. 189, 542 P.2d 313 (1975).

The percentage of extent of a claimant's disability is a question of fact. *Reichuber v. Cook Well Servicing,* 220 Kan. at 96. The test for determining permanent partial general disability is the extent to which the injured workman's ability has been impaired to engage in work of the same type and character he was performing at the time of his injury. K.S.A. 1979 Supp. 44-510e.

At the heart of the problem in the instant case is what the parties see as a conflict between K.S.A. 1979 Supp. 44-510c and 44-510e. K.S.A. 44-510c(a)(2) gauges such disability on the ability of the workman to *engage in any type of substantial and gainful employment* while K.S.A. 1979 Supp. 44-510e(a) states the test is the workman's ability to *engage in work of the same type and character that he was performing at the time of his injury.* Additionally, the parties are unable to agree on the application of the concepts of *functional* and *work* disability.

The distinction between these two forms of disability is stated in *Anderson v. Kinsley Sand & Gravel, Inc.,* 221 Kan. 191, 195, 558 P.2d 146 (1976):

"Functional disability is the loss of a part of the total physiological capabilities of the human body. Work disability is that portion of the job requirements that a workman is unable to perform by reason of an injury."

K.S.A. 1979 Supp. 44-510c(a)(2) and 44-510e(a), which set out the two tests for permanent total and permanent partial disability,

were passed as part of the 1974 amendments to the workmen's compensation statute, effective July 1, 1974.

K.S.A. 44-505(c) as amended in 1974 provides:

"This act shall not apply in any case where the accident occurred prior to the effective date of this act. All rights which accrued by reason of any such accident shall be governed by the laws in effect at that time."

Therefore the substantive rights between the parties are determined by the law in effect on the date of the injury. See *Eakes v. Hoffman-LaRoche, Inc.,* 220 Kan. 565, 569, 552 P.2d 998 (1976).

Cases involving findings of permanent total disability where the injuries occurred prior to July 1, 1974, are not controlling as to the test used to determine permanent total disability. Many cases involving pre-1974 injuries have found a permanent total disability using the test of the extent to which a worker's ability has been impaired to procure in the open labor market, and to perform and retain work of the same type and character he was capable of performing before his injury. *E.g., Scott v. Day and Zimmerman, Inc.,* 215 Kan. 782, 529 P.2d 679 (1974)—accident occurred October 9, 1970; *Hall v. O'Neill Tank Company,* 217 Kan. 632, 538 P.2d 965 (1975)—no accident date stated, but no mention of the amended statute; *Hardman v. City of Iola,* 219 Kan. 840, 549 P.2d 1013 (1976)—date of accident, September 26, 1972; *Reichuber v. Cook Well Servicing,* 220 Kan. 93—injury in 1969.

We think it significant to note that in *Hardman v. City of Iola,* the respondent argued that the finding by the district court of permanent total disability was error in view of the amendment to K.S.A. 44-510c(a)(2), the same question we have presented before us now. In that case, the Supreme Court rejected the argument because it found no reason to give retroactive application to the amendment.

As to accidents occurring after the 1974 amendments, the cases do not specifically address the question of when a finding of permanent total disability can be made in view of the 1974 amendment defining permanent total disability as the inability to engage in any type of substantial and gainful employment.

It appears to us that the legislative intent of the 1974 act is to establish a test for work disability as follows: If the workman is permanently unable to engage in any type of substantial and gainful employment, the disability is a permanent total disability,

and he is entitled to recover under 44-510c; and, if he is permanently unable to engage in "work of the same type and character that he was performing at the time of his injury," the disability is a permanent partial disability and recovery is under 44-510e, but in an amount not to exceed the coverage provided by 44-510c.

Whether a permanent injury is *total* or *partial* is determinative of which section of the statute applies. K.S.A. 1979 Supp. 44-510c covers both permanent or temporary *total* disability, while K.S.A. 1979 Supp. 44-510e applies to permanent or temporary *partial* disability. The test of being completely and permanently unable to engage in any type of substantial and gainful employment determines when disability is *total,* and the test of being unable to engage in work of the same type and character that was performed at the time the injury was incurred determines when a disability is *partial.*

Since this is a case of first impression to come before the court since the 1974 amendments, we deem it advisable to set out what we consider the effect of the amendments to be.

In considering a permanent partial general disability under K.S.A. 1979 Supp. 44-510e, the work disability would be measured by the reduction, expressed as a percentage, in the worker's ability "to engage in work of the same type and character that he was performing at the time of his injury." Conceivably, a worker could be employed full time at a higher paying job and still be considered 100 percent less able to find and retain work of the same type and character as he was performing at the time of his injury. In such case a 100 percent permanent partial disability rating might be appropriate.

The main difference in effect between a permanent *total* disability and a permanent *partial* disability is that under a permanent total disability the benefits extend for the duration of the disability, not to exceed the maximum set by K.S.A. 1979 Supp. 44-510f(*a*), while under a permanent partial general disability, the maximum duration is further limited to not more than 415 weeks.

The district court adopted the findings of the examiner which indicate that the examiner felt claimant did not have either a permanent total or a permanent partial work disability. After finding what claimant had already been paid, and what was thereafter due him, the examiner stated:

"In making this finding I have not overlooked the Claimant's earnest contention that he is totally disabled simply because the doctors testify that he should not be doing the type of work which he described. That may be so, but he probably should not have been doing that type of work since 1971 and was reasonably well able to do it until the last episode on July 5. He has had a successful surgery, and in my opinion could perform and retain such employment as he was engaged in at the time of the accident on July 5 reasonably well with occasional episodes of pain not considerably different from those which he apparently endured from 1971 until the final, precipitating incident on July 5. Nevertheless, he is certainly entitled to his anatomical disability, and respected physicians retained by both the Claimant and the Respondent agree that it is in the neighborhood of 15 percent."

The examiner's finding was that claimant's ability to go back to work of the same type as before was not reduced. Our question is whether that finding is supported by substantial competent evidence.

The term "substantial evidence" is evidence possessing substance or relevance or which furnishes a substantial basis of fact from which the issues can be resolved. *Crow v. City of Wichita,* 222 Kan. 322, 332-333, 566 P.2d 1 (1977); *Barr v. Builders, Inc.,* 179 Kan. 617, 619, 296 P.2d 1106 (1956).

In viewing the record in a light most favorable to the party who prevailed below, as we are required to do, the evidence is as follows.

Dr. O. C. Loughmiller, a chiropractor, testified that he had treated claimant in 1971 on three occasions and that in his opinion Grounds had a bad back in 1971 and that it was inevitable that he would eventually aggravate that condition unless he could get work where he was not required to do manual labor. He next saw claimant after the 1974 accident and referred him to Dr. John F. Lance, an orthopedic surgeon. Dr. Loughmiller refused to express an opinion as to the claimant's ability to perform manual labor or of functional disability, preferring to leave that to Dr. Lance.

Dr. Lance testified he had performed a spinal fusion on claimant after the 1974 accident. Dr. Lance denied knowledge of the 1974 accident and attributed the necessity of the spinal fusion to the 1971 injury. The trier of facts found the spinal fusion arose out of the accident in 1974, and although no one challenges that finding on appeal, the record contains sufficient competent evidence to support that finding. Dr. Lance was asked if claimant could resume work similar to that engaged in prior to 1974 "as tolerated." He replied:

*"I think he probably could do that type of work. I don't think that he would be quite as safe on that job as someone who had never had any trouble with their back and I'm not sure that anybody is totally safe on that kind of a job. The back wasn't really built for that kind of work."

On cross-examination, claimant's attorney described the job and inquired whether claimant would be able to handle it and Dr. Lance testified:

"Yes I think that Mr. Grounds could probably go back to that kind of work and do it for some period of time at least but I think he is much more apt to get into trouble with his back again than someone who had a normal back so I wouldn't advise it."

Dr. Lance explained that a spinal fusion puts more stress on the remaining spinal joints, and particularly on the adjacent joint to the fusion than a normal spinal joint would be subject to. He further testified that if he were performing an employment physical for a prospective employer who desired to employ claimant to do work similar to that performed before the 1974 injury that he would not recommend that he be hired for that heavy labor. He agreed that if claimant was complaining of pain from lifting 18 months after surgery, that claimant should not attempt to do any type of work that causes back distress. Dr. Lance had last examined claimant in April of 1975 when he released him to do light work as tolerated.

If substantial competent testimony exists to support the trial judge's finding that claimant could do work of the same type and character as engaged in prior to his injury, it must be found primarily in Dr. Lance's testimony. It seems inconsistent to us that a doctor would testify that a man can perform certain labor but that he would not pass him on a physical examination to do the same job. The test, however, is not what we would have found if we had been the trier of facts. We thus hold the record contains sufficient competent evidence to support the finding that claimant is capable of performing work of the same type and character he was performing at the time of the injury.

The examiner also found that claimant was entitled to the 15 percent disability rating accorded him by the medical testimony as a functional disability even though no work disability was apparent. Such an award is authorized. "[C]omputation of an award may be based on functional disability where the percent-

age of work disability is not proved, is less, or is none. *Anderson v. Kinsley Sand & Gravel, Inc.,* 221 Kan. at 197." *Desbien v. Key Milling Co.,* 3 Kan. App. 2d 43, 45, 588 P.2d 482 (1979).

Turning now to the liability of the Fund, we are not impressed with the Fund's argument that a worker is not a handicapped employee simply because he has not been refused employment by others. The fact that a worker has never been denied employment because of a physical or mental impairment does not preclude a finding that he is a "handicapped employee" as defined in K.S.A. 1979 Supp. 44-566. We note the injury in this case occurred a few days after amendments to K.S.A. 44-567 became effective on July 1, 1974, and that at such time the formal filing of Form 88, Notice of Handicapped Employee, was not required. Also, under the statute, the employer has the burden of proving that he "knowingly" retained a "handicapped employee." *Hinton v. S. S. Kresge Co.,* 3 Kan. App. 2d 29, 592 P.2d 471 (1978), *rev. denied* 225 Kan. 844 (1979). While it is apparent the employer filed no Form 88 or other notice with the director at the time of claimant's employment, nevertheless, the findings below show that claimant was retained in his employment by his employer with knowledge of the handicap. The record contains sufficient competent evidence that (1) prior to the compensable injury the employee was suffering from a handicap as defined by K.S.A. 1979 Supp. 44-566, (2) prior to the compensable injury the employer had knowledge of the handicap, (3) the compensable injury was caused by or contributed to by the preexisting impairment, and (4) the disability would not have occurred but for the preexisting physical impairment. See K.S.A. 1975 Supp. 44-567 (since amended); Woodin, *Workmen's Compensation—The Workmen's Compensation Fund,* 24 Kan. L. Rev. 641 (1976).

Howard Johnson, respondent corporation's president, and claimant were personal friends, having known each other since childhood. Johnson hired claimant personally to be foreman even though he had known for many years that claimant had back problems. Further, Johnson had specific knowledge that claimant had a prior injury to his back in 1971 and that claimant had made a workmen's compensation claim at that time. In fact, Johnson's insurance agency had processed the 1971 claim. Johnson also knew that it was necessary for claimant to wear a back brace. Without reciting it here, suffice it to say that there was ample

medical testimony upon which the court below could base its finding that claimant was in fact a handicapped employee at the time he was hired by respondent. The testimony of Johnson clearly is substantial competent testimony to establish the finding below that he had knowledge of claimant's handicap, and clearly Johnson's knowledge as president of respondent corporation is imputable to respondent. *Mackey v. Board of County Commissioners,* 185 Kan. 139, Syl. ¶ 5, 341 P.2d 1050 (1959).

The trial court made the proper finding of disability herein, and the Fund was solely responsible for the payment of the award.

Affirmed.