(618 P.2d 849)

No. 51,554

Mae Bell Crabtree, *Appellee,* v. Beech Aircraft Corporation and State Automobile & Casualty Underwriters, *Appellants.*

Opinion filed October 24, 1980.

*John P. Woolf,* of Martin, Pringle, Fair, Davis & Oliver, of Wichita, for appellants.

*Kelly W. Johnston,* of Johnston & Johnston, P.A., of Wichita, for appellee.

Before Rees, P.J., Abbott and Meyer, JJ.

Abbott, J.: This appeal arises out of a worker's compensation claim made by Mae Bell Crabtree against her employer, Beech Aircraft Corporation. Beech and its insurance carrier appeal from the district court's judgment affirming the examiner's award for temporary total disability.

The basic issue in this case is the sufficiency of evidence to support an award for temporary total disability. On June 22, 1977, claimant slipped and fell, and as a result of her fall she suffered a fractured coccyx. She was treated by Dr. Duane A. Murphy, an orthopedic surgeon. During treatment, Dr. Murphy discovered that claimant had been diagnosed as having multiple sclerosis, although she was not aware of the diagnosis. Dr. Murphy was of the opinion that claimant might benefit from surgical removal of

the coccyx; he suggested a second opinion that resulted in her being referred to Dr. Cline D. Hensley, an orthopedic surgeon at the Wichita Clinic. Dr. Murphy knew that claimant's multiple sclerosis had been diagnosed at the Wichita Clinic, and it was his opinion that if the coccygectomy was to be performed it would be in claimant's best interest for it to be coordinated with and monitored by the physicians treating her for multiple sclerosis. Dr. Hensley examined claimant on October 17, 1977. He gave her the option of surgically removing the coccyx or waiting to see if her condition would improve. Claimant chose to wait. Dr. Hensley next saw her on June 27, 1978, and found her condition basically unchanged. Dr. Hensley renewed his offer to perform a coccygectomy if she felt the pain warranted surgery, and claimant again declined. Dr. Hensley testified that claimant's functional disability rating was 20 to 25 percent of the body as a whole and that would be decreased approximately 10 percent with successful coccygectomy; that people suffering from coccygodynia have gotten better spontaneously without surgery, and he thought that was possible here. He advised claimant she could engage in activities she could handle without unbearable pain resulting; that she should do what work she felt she could and avoid those activities that seemed to aggravate her pain. He did not otherwise express an opinion as to whether or not claimant could engage in any type of substantial and gainful employment.

Dr. Murphy last examined claimant on August 30, 1978, and released her to return to work as of September 5, 1978, with restrictions of "no prolonged standing, walking, sitting." He was of the opinion she could be fully employed at a job that would not require sitting. Dr. Murphy rated claimant 10 percent functionally disabled without surgery, and that could be reduced to 5 percent with a successful coccygectomy.

The sufficiency of evidence question stems from the fact that the claimant testified only one time in this case, and that was at the preliminary hearing held on February 22, 1978. Her testimony at the time was such that it would support a 100 percent temporary total disability award. The problem is that her testimony was four months old when she was examined and released by Dr. Hensley on June 27, 1978, and more than six months old when Dr. Murphy released her to return to work on September 5, 1978.

Before discussing the specific issues, a general review of applicable law is helpful in pinpointing the legal issues. The extent or degree of disability is a question of fact to be determined within the limits of the Workmen's Compensation Act by the trier of fact. *Boyd v. Yellow Freight Systems, Inc.,* 214 Kan. 797, 522 P.2d 395 (1974). Under K.S.A. 1979 Supp. 44-556(*c*), our scope of review is limited to questions of law. The question of whether a district court's judgment is supported by substantial evidence is one of law and if, when viewed in the light most favorable to the party prevailing below, there is substantial evidence to support the district court's factual findings, this Court is bound by those findings and has no power to weigh the evidence or reverse the final order of the court. The term "substantial evidence" when applied to workers' compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved. Although this Court may feel the weight of the evidence as a whole is against the findings of fact made by the district court, it may not disturb those findings if they are supported by substantial competent evidence. *Crow v. City of Wichita,* 222 Kan. 322, 332-33, 566 P.2d 1 (1977).

Medical evidence is not essential to the establishment of the nature and extent of an injured worker's disability, nor is a court limited by such evidence; the testimony of the claimant may be considered as well as the medical evidence. *Chinn v. Gay & Taylor, Inc.,* 219 Kan. 196, Syl. ¶ 3, 547 P.2d 751 (1976); *Polston v. Ready Made Homes,* 171 Kan. 336, 340, 232 P.2d 446 (1951); *Conner v. M & M Packing Co.,* 166 Kan. 98, 100, 199 P.2d 458 (1948).

Although this Court does not judge the credibility of witnesses nor determine the weight to be accorded their testimony, uncontradicted evidence that is not improbable or unreasonable cannot be disregarded by the district court unless it is shown to be untrustworthy and such uncontradicted evidence should ordinarily be regarded as conclusive. *Demars v. Rickel Manufacturing Corporation,* 223 Kan. 374, Syl. ¶ 5, 573 P.2d 1036 (1978); *Anderson v. Kinsley Sand & Gravel, Inc.,* 221 Kan. 191, Syl. ¶ 2, 558 P.2d 146 (1976).

We first determine whether the evidence is sufficient to support

the finding that the claimant was temporarily totally disabled as defined by statute. K.S.A. 1979 Supp. 44-510c(*b*)(2) states that "[t]emporary total disability exists when the employee, on account of the injury, has been rendered completely and temporarily incapable of engaging in any type of substantial and gainful employment." If the worker is not totally disabled, but is impaired in his or her ability to engage in work of the same type and character as was performed at the time of the injury, the disability is partial. *Grounds v. Triple J Constr. Co.*, 4 Kan. App. 2d 325, Syl. ¶¶ 1, 3, 606 P.2d 484, *rev. denied* 227 Kan. 927 (1980).

The purpose of temporary total disability compensation is to compensate an injured worker for loss of wages during the healing period—the time it takes the worker to recover from the injury. An injury is no longer temporary when maximum recovery is reached or when the worker's condition becomes medically stationary or stable. Maximum recovery and medical stability are key factors in determining the time demarcation between temporary disability and permanent disability. *Rose v. Thornton & Florence Electric Co.*, 4 Kan. App. 2d 669, 609 P.2d 1180, *rev. denied* 228 Kan. 807 (1980).

Appellants concede that claimant was temporarily totally disabled from and after the date of the injury on June 22, 1977, until the date of her release to return to work on September 5, 1978. Accordingly, no complaint is made relating to the preliminary award or to the examiner's failure to reduce or modify the temporary total disability awarded therein. See K.S.A. 1979 Supp. 44-534a. It is contended, however, that the evidence conclusively establishes that after September 5, 1978, claimant at most was entitled to an award for between 10 and 25 percent permanent partial disability. In support of this contention, appellants emphasize the undisputed evidence that claimant's fractured coccyx had healed prior to the final award, that claimant's testimony was taken some eight months prior to the award, and that claimant was restrictively released to return to work prior to the rendition of the award in question. Reliance is also placed on K.S.A. 1979 Supp. 44-510c(*b*)(3), which provides:

"*Where no award has been entered by the director,* a return by the employee to any type of substantial and gainful employment, or *a release by a treating physician or examining physician, who is not regularly employed or retained by the employer, to return to any such employment, shall suspend the employee's right to the payment of temporary total disability compensation, but shall not*

*affect any right the employee may have to compensation for partial disability* in accordance with K.S.A. 1979 Supp. 44-510d and 44-510e, and amendments thereto." Emphasis added.

This provision is intended to suspend the right to temporary total compensation when there has been a return to some type of substantial or gainful employment or when a release has been made by a treating or examining physician to return to such employment. Wright & Rankin, *Potential Federalization of State Workmen's Compensation Laws - The Kansas Response,* 15 Washburn L.J. 244, 259-60 (1976).

As we view the record, it does not contain sufficient evidence to support an award of 100 percent temporary total disability. The claimant's testimony alone would support a finding that she was completely and temporarily incapable of engaging in any type of substantial gainful employment, but that testimony was given in the preliminary hearing some eight months prior to the submission of the claim to the examiner. The medical evidence, based on medical examinations performed some four to six months after claimant testified, was that the fracture had healed and that claimant was given a qualified work release by the treating physician. The finder of facts determined that the disability was temporary in quality, and the record reflects sufficient competent evidence to support that finding. Thus, the correct finding under the evidence is that the claimant sustained a temporary *partial* disability and compensation should be computed under K.S.A. 1979 Supp. 44-510e. That statute provides for temporary partial disability to be computed by taking 66⅔ percent of the difference between the average gross weekly wage that the worker was earning prior to the injury and the amount he or she is *actually* earning after the injury in any type of employment. It is apparent the legislature intended that a claimant who has a temporary partial disability should be entitled to draw the maximum compensation to which one is entitled under the Act unless the claimant is employed. The physical ability to be employed even though suffering from a temporary partial disability will not defeat or diminish the amount of compensation due an injured worker if the worker is not actually employed. Many injuries are such that a worker can do some type of substantial and gainful employment. For example, a worker who has a limb in a cast or who is suffering from a laceration can do clerical work or some

kinds of retail sales. The ability to obtain that type of employment, however, is slim, especially when the prospective employer knows the worker will return to a better paying job as soon as the injury heals. The legislature obviously did not desire to penalize a worker under those circumstances. Once the disability is classified as a permanent partial disability, the method of fixing the disability is fixed by statute and depends upon whether the injury is scheduled (K.S.A. 1979 Supp. 44-510d) or unscheduled (K.S.A. 1979 Supp. 44-510e).

The record in this case is barren of any evidence that claimant was employed or refused to accept available employment. Thus, the trial judge, although he erroneously labeled the award 100 percent temporary total rather than 100 percent temporary partial, did not err in granting the award.

The employer contends that claimant should have been rated as having a permanent partial disability. Our answer to that argument is that even though the record contains evidence to support a finding of permanent partial disability, it also contains evidence to support a finding that the disability was not yet permanent in quality in that further improvement could occur and frequently has occurred in similar cases. If claimant is now suffering from a permanent partial injury, the Workmen's Compensation Act allows the employer to make application for review and modification pursuant to K.S.A. 1979 Supp. 44-528.

Affirmed.

REES, J.: I dissent. The majority affirms, holding the evidence supports an award of 100% temporary partial disability compensation and temporary total disability compensation is a misnomer for the trial judge's award. I find involved in the majority decision an incorrect answer to a necessary question. The question is whether in nonscheduled injury cases the "partial disability" for which temporary partial disability compensation is payable is partial disability as defined in the statutory definition of permanent partial disability, that is, inability to engage in work of the same type and character as performed at the time of the injury. The answer is in the Workmen's Compensation Act, K.S.A. 44-501 *et seq.*; it is not in relevant Kansas appellate opinions.

The Act directly defines permanent total, temporary total and permanent partial disability. K.S.A. 1979 Supp. 44-510c(*a*)(2),

-510c(*b*)(2), -510e(*a*). Total disability entitling a claimant to temporary total or permanent total disability compensation is complete *incapability to engage in any type of substantial and gainful employment.* K.S.A. 1979 Supp. 44-510c(*b*)(2), -510c(*a*)(2). Partial disability entitling a claimant to permanent partial disability compensation is *inability to engage in work of the same type and character as performed at the time of injury.* K.S.A. 1979 Supp. 44-510e(*a*). Compensation payable for each of these three "disabilities" is for *loss of wage earning capacity.*

There is no direct definition of temporary partial disability in the Act. There is only a statutory expression of the formula for computation of weekly compensation for temporary partial disability. K.S.A. 1979 Supp. 44-510e(*a*). The cornerstone of this formula is the "difference between the average gross weekly wage . . . and the amount [claimant] is actually earning after [the] injury in any type of employment." The post-injury actual earnings referred to are not limited to earnings from work of the same type and character as performed at the time of injury. In contrast to the formula for computation of permanent partial disability compensation, the temporary partial disability compensation formula factors do not include a disability percentage, a number determined as a conclusion of fact which is frequently if not most often drawn from opinion evidence. Temporary partial disability compensation is keyed to the difference between pre-injury and post-injury earnings, a fact ordinarily indisputable and ascertainable without debate or the need for opinion evidence. Compensation payable for temporary partial disability is for *actual wage loss.*

Loss of wage earning capacity and actual wage loss are distinct, different concepts.

Acknowledging the purpose of the Act to be wage replacement, restoration to a worker of a portion of wage loss (*Boyd v. Barton Transfer & Storage,* 2 Kan. App. 2d 425, 426-428, 580 P.2d 1366, *rev. denied* 225 Kan. 843 [1978]), it remains that for whatever reason it may have come to pass, by the legislatively chosen operative language of K.S.A. 1979 Supp. 44-510c(*a*)(2), -510c(*b*)(2), and -510e(*a*) only temporary partial disability compensation entitlement is afforded upon the theory of actual wage loss. Entitlement to temporary total, permanent total and permanent partial disability compensation is afforded upon the theory

of loss of wage earning capacity. (The practical consequences of proof of actual post-injury earnings where temporary or permanent total disability is claimed are of no present moment.)

Under the pre-1974 version of the Act, temporary partial disability compensation was founded upon the difference between pre-injury wages and post-injury wages *earned or able to be earned.* (K.S.A. 44-510c(*b*); K.S.A. 44-510e.) By the 1974 revision of the Act, the post-injury "able to earn" alternative element was deleted. The deletion served to eliminate evidentiary squabbles over the claimant's post-injury ability to earn in favor of determination of the single and ordinarily indisputable fact element, the amount of actual post-injury earnings.

Although attractive arguments may be made to the contrary, I conclude temporary partial disability compensation is not payable unless there are actual post-injury earnings. Again, computation of temporary partial disability compensation is required by the Act to include as its key factor the difference between pre-injury earnings and post-injury earnings. There cannot be a *difference* between two earnings amounts if there is only one earnings amount. That the *concept* of temporary partial disability compensation is actual wage loss does not alter the fact that under the Act the key computation factor is the difference between pre-injury and post-injury earnings. The key factor is not stated to be the loss of earnings experienced; the actual wage loss concept is restrictively implemented. It is not our lot to legislate.

Entitlement to temporary partial disability compensation presupposes actual post-injury earnings and entitlement to temporary partial disability compensation does not exist where, as in this case, there are no actual post-injury earnings. The authors' comments in Herrington, *Workmen's Compensation—Major Changes in Employments Covered, Benefits, Defenses, Offsets, and Other Changes,* 24 Kan. L. Rev. 611, 614 (1976), and McCullough, *Workmen's Compensation—Permanent Partial Disability Benefits—The Dilemma,* 24 Kan. L. Rev. 627, 629-630 (1976), indicate the existence of this presupposition. I find no authority indicating nonexistence of this presupposition.

The Act is self-contained, complete in and of itself. Compensation cannot be afforded to a person not entitled to it under the Act.

Relying upon *Grounds v. Triple J Constr. Co.,* 4 Kan. App. 2d

325, Syl. ¶¶ 1, 3, 606 P.2d 484, *rev. denied* 227 Kan. 927 (1980), the majority concludes partial disability for which temporary partial disability compensation is payable is inability to engage in work of the same type and character as performed at the time of the injury, that is, partial disability as defined in the statutory definition of permanent partial disability. This reliance is misplaced for two reasons. First, the conclusion is the product of application of the concept of loss of wage earning capacity to a compensation entitlement afforded upon the distinct and different concept of actual wage loss. Second, the relied upon citations to *Grounds* are inapplicable. The nature of partial disability for which temporary partial disability compensation is payable was not at issue in *Grounds;* that case concerned the nature of total disability giving rise to entitlement to permanent total disability compensation *vis-a-vis* the nature of partial disability giving rise to entitlement to permanent partial disability compensation. 4 Kan. App. 2d at 328-330.

Harsh though it may appear to some, a claimant who is not totally disabled but who is temporarily unable to engage in work of the same type and character as performed at the time of injury, is not entitled to compensation if he has no actual post-injury earnings.

Temporary partial disability compensation is not payable to the claimant in this case—she has no post-injury earnings. Furthermore, it is my conclusion that as a matter of law, the claimant's disability is not temporary.

As noted by the majority, the purpose of temporary total disability compensation is compensation for loss of wages during the healing period. This claimant does not dispute the medical finding of both doctors that claimant's coccyx fracture had healed. Her medical condition has become medically stationary and stable. The probable time for continuance of claimant's disability, her painful coccyx, is indefinite and indeterminate. By application of the principles expressed in *Rose v. Thornton & Florence Electric Co.*, 4 Kan. App. 2d 669, 672, 609 P.2d 1180, *rev. denied* 228 Kan. 807 (1980), an opinion filed subsequent to entry of the judgment from which this appeal is taken, her healing period is over and her condition is permanent, not temporary, in quality.

As a part of its argument, the employer contends that under K.S.A. 1979 Supp. 44-510c(*b*)(3) Dr. Murphy's release of claimant

suspended and terminated claimant's right to temporary total disability compensation. The language of the statute is set forth in the majority opinion. This contention is without merit.

The order of the examiner entered following the preliminary hearing, although entitled "Order for Compensation," is an award. Though preliminary and not final, nonetheless it is an award. See K.S.A. 1979 Supp. 44-534a(*a*). By reason of its filing in the office of the director, the award is deemed to be an award of the director. K.S.A. 1979 Supp. 44-549. K.S.A. 1979 Supp. 44-510c(*b*)(3), providing that the right to temporary total compensation is suspended upon a physician's release, is operative "[w]here no award has been entered by the director." An award of the director having been entered when Dr. Murphy released claimant, the release did not serve to suspend claimant's right to temporary total disability compensation.

The testimony of Dr. Hensley and Dr. Murphy, evidence which the majority correctly finds is uncontradicted evidence that is not improbable, unreasonable or shown to be untrustworthy, and may not be disregarded, establishes that claimant's disability is not total, that is, she is not incapable of engaging in any type of substantial and gainful employment. She is not totally disabled.

Is claimant entitled to an award of temporary partial disability compensation? No. She has no actual earnings and her impairment resulting from the June 22, 1977, accident is no longer temporary. The case is ripe for entry of a permanent partial disability award, an award that is subject to appropriate modification as authorized by K.S.A. 1979 Supp. 44-528.

Having concluded that on the record evidence and as a matter of law the claimant's disability is not temporary but permanent and is not total but partial in that there exists an inability to engage in work of the same type and character as performed at the time of injury, there remains the question of whether our action should be in the nature of modification of the award made by the trial judge. The majority seems to choose to do so. They affirm, stating the award should have been for 100% temporary partial disability compensation. As I have described, temporary partial disability compensation is not payable to claimant. Neither should we modify the trial judge's award by directing entry of an award for permanent partial disability compensation because that would require that we make the factual determination of a proper

disability percentage to be utilized in computation of compensation to be paid, a decision on a factual issue not addressed by the trial judge, and which would be action outside our scope of review.

I conclude the trial judge's award should be reversed and the case remanded for entry of a permanent partial disability award for such percentage as may be found proper upon further consideration.