(668 P.2d 196)
No. 55,527

ALICE M. PLOUTZ, *Claimant-Appellant,* v. ELL-KAN COMPANY and/or ELL-KAN COMPANY, INC., and LIBERTY MUTUAL INSURANCE COMPANY, and WORKERS' COMPENSATION FUND, *Respondents-Appellees.*

10

 Opinion filed
August 18, 1983. 

*George E. McCullough,* of McCullough, Wareheim & LaBunker, of Topeka, for appellant.

*Brock R. McPherson,* of McPherson, Bauer & Pike, Chtd., of Great Bend, for appellee Workers' Compensation Fund.

Before FOTH, C.J., SPENCER and MEYER, JJ.

MEYER, J.: Claimant-appellant Alice Ploutz (claimant) was employed as a wire cutter for respondent-appellee Ell-Kan Company. She claims a 100 percent permanent partial general disability based on a back injury arising from and aggravated by three separate accidents occurring March 29, 1977, September 12, 1977, and March 19, 1979. Claimant sought medical treatment after each injury and was hospitalized each time. She has received medical treatment from several chiropractors, as well as several medical doctors from the time of the first accident to the present. Claimant returned to work after recuperating from the first two accidents. Likewise, claimant returned to work after the third accident in March 1979. However, she continued to miss work frequently because of back pains, until she finally quit her job in November 1979. Claimant is now employed in a liquor store owned by her son. Her duties include some light lifting, but do not involve lifting anything heavier than a single case of beer.

After a hearing, the administrative law judge found that claimant's injuries were caused by the three accidents, with all three arising out of and in the course of her employment. He determined that the third injury of March 19, 1979, should be set off against the Workers' Compensation Fund because the third accident would not have occurred "but for" the first two injuries. The administrative law judge also determined that claimant suffered a 40 percent permanent partial general disability to the body as a result of the injuries. The administrative law judge concluded that under the circumstances, the claimant would not be able to return to the same position of employment with respondent Ell-Kan Company.

Both the claimant and the Workers' Compensation Fund ap-

pealed this award to the workers' compensation director. The director affirmed the claim against the fund, but modified the award. The director found that claimant suffered a 20 percent permanent partial disability as a result of the 1977 accidents, and a 50 percent permanent partial disability following the more recent surgery and doctors' limitations. The director did not make a specific finding or conclusion that claimant could not return to the same job she had previously held.

The claimant, the employer, and the fund all appealed to the district court from the director's award. That court accepted as accurate all findings of the administrative law judge, and adopted them as its own, thus reversing the director's order and reinstating the administrative award.

Claimant has timely perfected an appeal to this court of the district court's findings and award. The Workers' Compensation Fund does not appeal.

The issue which must be decided in this case is: Did the district court err in finding claimant had suffered a 40 percent permanent partial disability to the body as a whole when that court also concluded that such disability prevented the claimant from resuming her previous work with Ell-Kan Company?

The applicable scope of appellate review in a workers' compensation case is well known and need not be set out herein. See *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 442-3, 625 P.2d 453 (1981).

The Workmen's Compensation Act was designed to provide compensation to employees who suffer work disabilities resulting from employment-related accidents.

" 'Work disability is that portion of the job requirements that a workman is unable to perform by reason of an injury.' " *Desbien v. Key Milling Co.*, 3 Kan. App. 2d 43, 45, 588 P.2d 482 (1979), citing *Anderson v. Kinsley Sand & Gravel, Inc.*, 221 Kan. 191, 195, 558 P.2d 146 (1976).

There are four classes of disabilities defined by the statutes—temporary partial, temporary total, permanent partial, and permanent total. The parties herein are in general agreement that the claimant's injuries have resulted in permanent partial general disability; it is the degree of that disability which is the bone of contention between the parties.

The statute defining permanent partial general disability is K.S.A. 44-510e(a), which states in pertinent part:

"Permanent partial general disability exists when the workman is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d, as amended. The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the ability of the workman to engage in work of the same type and character that he was performing at the time of his injury, has been reduced."

This court, in *Grounds v. Triple J Constr. Co.*, 4 Kan. App. 2d 325, 330, 606 P.2d 484, *rev. denied* 227 Kan. 927 (1980), had occasion to interpret this statute. We offered the following distinctions between permanent *total* and permanent *partial* disability:

"Whether a permanent injury is *total* or *partial* is determinative of which section of the statute applies. K.S.A. 1979 Supp. 44-510c covers both permanent or temporary *total* disability, while K.S.A. 1979 Supp. 44-510e applies to permanent or temporary *partial* disability. The test of being completely and permanently unable to engage in any type of substantial and gainful employment determines when disability is *total*, and the test of being unable to engage in work of the same type and character that was performed at the time the injury was incurred determines when a disability is *partial*."

The court in *Grounds* also noted that the statute defines permanent partial general disability:

"The test for determining permanent partial general disability is the extent to which the injured workman's ability has been impaired to engage in work of the same type and character he was performing at the time of his injury. K.S.A. 1979 Supp. 44-510e." 4 Kan. App. 2d at 328.

And, in this same opinion, the court provided the following formula for quantifying the degree of permanent partial general disability suffered by a claimant:

"In considering a permanent partial general disability under K.S.A. 1979 Supp. 44-510e, the work disability would be measured by the reduction, expressed as a percentage, in the worker's ability 'to engage in work of the same type and character that he was performing at the time of his injury.' " 4 Kan. App. 2d at 330.

The claimant in this case contends she has suffered a 100 percent permanent partial general disability. She bases this contention on the district court's finding that she cannot return to her previous work with her former employer. Claimant insists that a finding that a disabled worker is unable to return to the precise job that he or she occupied prior to a compensable accidental injury is tantamount to a finding that such claimant is totally and permanently unable to perform "work of the same type and character," and thus, that such claimant suffers a 100

percent permanent partial general disability. Claimant's argument is that such a finding cannot be reconciled with a finding of only 40 percent permanent partial general disability, and that such latter finding, being inconsistent with the former, must yield to it.

The district court in the present case adopted the findings of fact made by the administrative law judge. The precise language in the administrative law judge's award to which claimant objects reads as follows:

"The Judge has concluded that claimant suffers from a permanent disability as a result of her injury March 19, 1979, and that her ability to find and retain employment has been substantially impaired. Accordingly, the Judge would find that claimant suffers from a permanent partial disability to the body as a whole of 40%. This disability rating takes into consideration the functional disability of claimant along with the work disability. The evidence is somewhat mixed in regard to whether claimant could return to work for respondent, but the Judge has concluded that with the limitations imposed that she could not."

These findings were, of course, based upon the evidence presented at the administrative hearing. This evidence included the expert testimony of four doctors. Three of these doctors testified the claimant had a 15 percent functional disability. One of these stated that the claimant should not do regular heavy manual labor, but could lift 10 to 15 pounds. The claimant testified that she continued to work for her previous employer for seven to eight months following the third injury, but that she required assistance from coworkers in lifting the bundles of wire. Such evidence is sufficient to support the district court's finding of 40 percent permanent partial disability. We find no merit to claimant's argument that the court's finding that claimant could not return to her previous position with respondent Ell-Kan Company was a finding of 100 percent partial general disability to the body as a whole, and as such, was at odds with the court's finding of 40 percent permanent partial general disability.

The finding that claimant cannot return to her previous employment *does not* state that claimant is now physically unable to perform any of the requirements of her former employment; it states only the judge's conclusion that she cannot return to that precise employment due to limitations placed on her physical activities. The finding that she is 40 percent disabled is not inconsistent with the finding that she cannot return to work at her previous job; instead the former explains and augments the

latter. When taken together, the effect of these two findings is that while claimant can no longer do every task she previously performed, she can still perform 60 percent of those tasks. Being unable to perform only 40 percent of the requirements of her previous job, she is entitled only to an award based on 40 percent permanent partial general disability.

The loss of only a portion of one's abilities to work at a previous employment entitles one only to compensation based on that portion of abilities lost; this principle remains true even though that fractional loss results in complete termination from the previous employment. Our conclusion finds support in recent case law.

In *Maxwell v. City of Topeka,* 5 Kan. App. 2d 5, 7, 611 P.2d 161, *rev. denied* 228 Kan. 807 (1980), the court described the correct method of quantifying the degree of permanent partial general disability with this language:

"The pivotal question thus becomes, what portion of claimant's job requirements is he now unable to perform because of his injury?"

In the process of determining the percentage of permanent partial general disability suffered by a claimant, the fact that such claimant is or is not retained in the specific job he or she occupied at the time of the injury is not determinative. Thus, a finding by the trial court that a claimant suffers a permanent partial general disability of some stated percentage is not necessarily inconsistent with a finding that claimant cannot return to the job he or she had when injured. Were such findings necessarily inconsistent, the effect would be to render K.S.A. 44-510e(a) inoperative in all cases where a claimant was not retained in the same employment.

Having concluded that there is no inconsistency between the various findings of fact adopted by the district court, and having determined that those findings are supported by substantial competent evidence and that they adequately explain the court's conclusions of law, we are compelled to affirm.

Affirmed.