(732 P.2d 808)

No. 59,571

BRAD KNELSON, *Claimant-Appellee,* v. MEADOWLANDERS, INC., *Respondent-Appellant,* and INSURANCE COMPANY OF NORTH AMERICA, *Insurance Carrier-Appellant.*

Opinion filed February 19, 1987.

*Randall E. Fisher,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellants.

*Jim Lawing,* of Wichita, for appellee.

Before PARKS, P.J., BRAZIL and DAVIS, JJ.

DAVIS, J.: Meadowlanders, Inc., and its insurance carrier, Insurance Company of North America, (hereinafter referred to as respondents) appeal from a district court workers' compensation decision awarding Brad Knelson (claimant) 100 percent permanent partial disability. Respondents claim that the trial court erred in finding that (1) Kansas had jurisdiction to resolve this workers' compensation dispute (K.S.A. 44-506); (2) claimant had sustained a 100 percent permanent partial disability; and (3) respondents were not entitled to credit against the award pursuant to K.S.A. 44-510f(b).

Claimant was a professional hockey player under contract to Meadowlanders, Inc., (New Jersey Devils Hockey Club). He

was earning $25,000 for the 1982-83 season, playing for the Wichita Wind, Wichita, Kansas.

Claimant was injured in a hockey game played by the Wichita Wind in Salt Lake City, Utah, on or about March 2, 1983. Another player blindsided (struck) claimant, causing him to feel a kind of shock and "the shift of just everything in my lower back." Claimant left the ice and returned to the bench.

Within the next several weeks, claimant began to experience pain in his lower back, which made it difficult for him to skate. He consulted the team trainer, who instituted the standard treatment used to correct pulled muscles and other minor injuries. Claimant continued to play the remainder of the Wichita Wind's 1982-83 season and then signed an option with Meadowlanders, Inc., to play out the 1983-84 season.

Claimant consulted the Wichita Wind's team chiropractor about his problem during the off season in the summer of 1983. He reported for training camp in New Jersey in the fall of 1983, but was forced to discontinue skating after one week because of pain in his left leg and left buttock accompanied by tingling in his left foot. The team physician referred him to an orthopedic specialist in New York City in September 1983.

The orthopedist, Dr. Patrick F. O'Leary, diagnosed disc degeneration and recommended either surgery or, more favorably, a course of physical therapy. Knelson elected to pursue rehabilitation through physical therapy. After the season was two or three months old, claimant returned to Wichita to continue his therapy.

Claimant last saw Dr. O'Leary in early 1984. At that time Dr. O'Leary noticed a considerable improvement. Claimant was released to play hockey or, more precisely, to begin skating again.

Claimant contacted the Meadowlanders, Inc., organization about returning to play, but the parties agreed that it was so near the end of the season that his return was infeasible. He could not have returned to playing form before the season was over. He received his $25,000 contract salary during the 1983-84 season, as if he were a member of the Wichita Wind. Claimant attempted to skate once thereafter in March 1984, but was unable to gauge any deficiency because he was not in playing form for competi-

tive sport. He experienced his left leg giving out on him at times and also a "floppy" sensation and numbness in the leg. He has not tried to play hockey since he was released by Dr. O'Leary.

A medical evaluation indicated that, although claimant had made a remarkable recovery, he had a remaining ten to fifteen percent permanent impairment of function to his body as a whole. It was not recommended that claimant return to competitive sports, particularly hockey.

On August 2, 1984, claimant filed with the State of Kansas, Division of Workers' Compensation, a workers' compensation claim against Meadowlanders, Inc., and its insurance carrier. On December 4, 1985, an administrative law judge, after hearing testimony and reviewing the evidence, found that claimant had sustained a fifteen percent impairment of function to his body as a whole. Claimant was found to be 100 percent work-disabled because, although he otherwise was in excellent health, he could no longer function as a professional hockey player. Claimant was awarded compensation at $204.00 per week, not to exceed $75,000, for a 100 percent permanent partial general body disability and medical compensation.

Respondents applied for a director's review of the award. In an order filed February 24, 1986, the Director of Workers' Compensation affirmed the December 4, 1985, award of the administrative law judge. Respondents appealed to the district court, which approved the findings of fact and conclusions of law entered by the Workers' Compensation Director. Respondents timely appeal.

Respondents contend that because the principal place of employment was not the State of Kansas and the contract of employment with claimant was not made in Kansas, jurisdiction was not based in Kansas under the following provisions of K.S.A. 44-506:

"*Provided,* That the workmen's compensation act shall apply also to injuries sustained outside the state where: (1) The principal place of employment is within the state; *or* (2) the contract of employment was made within the state, unless such contract otherwise specifically provides: . . . ." (Emphasis added.)

Although the above statute does not indicate whether the employer's or employee's principal place of employment is the basis for Kansas jurisdiction, legislative history establishes that

the Kansas legislature intended the employee's principal place of employment be the basis for jurisdiction. Kansas Workers' Compensation Practice Manual § 3-6 (1984) (citing Herrington, *Workmen's Compensation—Major Changes In Employments Covered, Benefits, Defenses, Offsets, and Other Changes*, 24 Kan. L. Rev. 611, 618 [1976]).

The burden of proof is upon the claimant to establish the right to an award of compensation by proving the various conditions on which the right depends by a preponderance of credible evidence. *Box v. Cessna Aircraft Co.*, 236 Kan. 237, Syl. ¶ 2, 689 P.2d 871 (1984); K.S.A. 44-501.

At the time of his injury, claimant was employed by Meadow-landers, Inc., the corporate owner of the New Jersey Devils professional hockey team. Claimant entered into a contract of employment with the respondent in October 1982, and, thereafter, played for a minor league club, the Wichita Wind, throughout the 1982-83 season. Wichita, Kansas, was his base of operations, and claimant traveled from that location to the March 1983 game in Salt Lake City, Utah. He played on no other teams during the 1982-83 season. He received his paychecks in Wichita, Kansas.

The trial court's conclusion that claimant's principal place of employment was within the State of Kansas at the time of his injury is supported by substantial competent evidence. Kansas therefore had jurisdiction to entertain his claim under the provisions of K.S.A. 44-506(1).

Second, respondents claim there was no substantial evidence to support the trial court's finding that claimant was 100 percent permanently partially disabled.

Essentially, respondents contend that claimant was released by physicians to play hockey without restriction but never attempted to do so. In addition, respondents contend that the claimant made a remarkable recovery from a herniated disc and has little residual effect from the injury, as confirmed by his own medical expert. Based upon these contentions, respondents argue that there is insufficient evidence of record to support the trial court's finding that claimant sustained a 100 percent permanent partial disability to his body as a whole.

"The test to determine whether claimant has suffered and continues to suffer

permanent partial general disability is set forth in K.S.A. 44-510e(a): "The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the ability of the workman to engage in work of the same type and character that he was performing at the time of his injury, has been reduced.' " *Asay v. American Drywall*, 11 Kan. App. 2d 122, Syl. ¶ 2, 715 P.2d 421 (1986).

"The pivotal question is what portion of claimant's job requirements is he or she unable to perform because of the injury? *Ploutz v. Ell-Kan Co.*, 234 Kan. 953, 955, 676 P.2d 753 (1984); *Ploutz v. Ell-Kan. Co.*, 9 Kan. App. 2d 9, 668 P.2d 196 (1983). See *Maxwell v. City of Topeka*, 5 Kan. App. 2d 5, 611 P.2d 161, *rev. denied* 228 Kan. 807 (1980)." 11 Kan. App. 2d at 124.

In *Bigger v. Kansas Dept. of Revenue*, 11 Kan. App. 2d 108, Syl. ¶ 1, 715 P.2d 1038 (1985), this court held:

"Under the statutory definition of permanent partial disability set forth in K.S.A. 44-510e, a claimant can be found to be totally unable to perform any portion of work of the same type and character performed at the time of the injury, yet still be able to engage in gainful employment; or, stated another way, when factually supported, a finding of 100 percent permanent partial disability is proper."

The only medical testimony came from Dr. Roy Coffey, M.D., a Salina, Kansas, orthopedist specializing in sports medicine. Dr. Coffey testified that claimant had made a remarkable recovery from a herniated disc, but had a remaining ten to fifteen percent impairment of function to his body as a whole on a permanent basis. Dr. Coffey stated this meant that claimant "can do ordinary activities without trouble, but I doubt if he would want to or anybody would recommend that he go back to competitive athletics, especially hockey."

Dr. Coffey testified his delineation of a ten to fifteen percent impairment was based on "the history of the injury, the fact he had a positive discogram in New York and the fact that at one time his pain was unbearable, but with doctors' recommendations and his motivation he actually cured himself, and the 10 to 15 percent recognizes an injury, a herniated disc and a good recovery, but it also recognizes his back isn't what it was before he got hurt." Dr. Coffey also testified that because it takes time for a herniated disc to develop, it was not unusual that claimant's symptoms increased over time or that he continued to play out the 1982-83 season although injured.

Claimant testified that his medical release was with the restriction that "if it hurt not to play any more; but if I wanted to

make an attempt, I could." He testified that he was not aware of any hockey player who was able to continue playing the sport of hockey after suffering a herniated disc. He testified that he sometimes felt a floppy sensation in his left leg or his left leg giving out in strength. He also testified that Dr. O'Leary had informed him that his lower back problem could result in a weakness of the left leg as the years passed.

In *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 442, 625 P.2d 453 (1981), the supreme court, quoting *Crabtree v. Beech Aircraft Corp.*, 5 Kan. App. 2d 440, 442, 618 P.2d 849 (1980), noted, " 'Medical evidence is not essential to the establishment of the nature and extent of an injured worker's disability, nor is a court limited by such evidence; the testimony of the claimant may be considered as well as the medical evidence.' "

We conclude under the facts of this case that there was substantial competent evidence to support the trial court's finding that claimant was unable to return to playing professional hockey and, therefore, was entitled to a 100 percent permanent partial general body disability award.

Finally, respondents contend they were entitled under the provisions of K.S.A. 44-510f(b) to a credit against the workers' compensation award for the wages paid claimant during the 1983-84 hockey season.

Under certain prescribed circumstances, an employer who voluntarily paid unearned wages is entitled to credit on the subsequent workers' compensation owed. K.S.A. 44-510f(b) states:

"If an employer shall voluntarily pay unearned wages to an employee in addition to and in excess of any amount of disability benefits to which the employee is entitled under the workmen's compensation act, the excess amount paid shall be allowed as a credit to the employer in any final lump sum settlement, or may be withheld from the employee's wages in weekly amounts the same as the weekly amount or amounts paid in excess of compensation due, but not until and unless the employee's average gross weekly wage for the calendar year exceeds one hundred twenty-five percent (125%) of the state's average weekly wage, determined as provided in K.S.A. 44-511 and amendments thereto. The provisions of this subsection shall not apply to any employer who pays any such unearned wages to an employee pursuant to an agreement between the employer and employee or labor organization to which the employee belongs."

Respondents argue that, because claimant was playing out his

option year, the employment contract established that payments made to him were voluntary and that the K.S.A. 44-510f(b) credit applied. Paragraph 5(d) of the contract executed between the parties in 1982 states:

"It is also agreed that if the Player, in the sole judgment of the Club's physician, is disabled and unable to perform his duties as a hockey player by reason of an injury sustained during the course of his employment as a hockey player, including travel with his team or on business requested by the Club, he shall be entitled to receive his remaining salary due in accordance with the terms of this contract for the remaining stated term of this contract as long as the said disability and inability to perform continue but in no event beyond the expiration date of the fixed term of this contract, *which fixed term shall in no event be deemed to include any option period related to a playing season after the playing season in which the injury occurred* and the Player releases the Club from any and every additional obligation, claim or demand whatsoever. Any disagreement as to disability or inability to perform shall be determined conclusively by doctors of the Club and of the Player and, in the event said doctors are unable to agree, by an independent doctor selected by said doctors. If the Player is declared to be unfit for play, he shall continue to receive the full benefits of this Agreement. If the Player is declared to be physically able to play and refuses to do so, he shall be liable to immediate suspension without pay." (Emphasis added.)

In its denial of respondents' request for statutory credit, the district court ruled:

"As to the final issue of whether or not the respondent and insurance carrier are entitled to credit under K.S.A. 44-510f(b) for payments made to the plaintiff under his professional hockey contract executed October 4, 1982, the Court finds that the statute in question is not applicable to this set of facts because the defendant employer was not paying the plaintiff's employment contract for the 1983-84 hockey season voluntarily or as unearned wages. That contract required the employer to pay the plaintiff whether or not he worked as a hockey player. Therefore, the request for statutory credit is denied."

The record reveals that after claimant's injury in March 1983, he completed the 1982-83 season. Despite continuing problems resulting from his injury, he reported to training camp in the fall of 1983. Claimant left training camp for medical treatment and, although he did not play in the 1983-84 season, received his entire $25,000 salary from the respondent. Although claimant was receiving medical treatment during most of the 1983-84 season, there is no evidence in the record to indicate that the $25,000 paid to claimant for the 1983-84 season was made by reason of claimant's disability. A letter written by the vice-pres-

ident of Hockey Operations and general manager of the New Jersey Devils, and stipulated into evidence, indicates the $25,000 was paid to claimant under a "termination contract" entered into between respondent and claimant prior to the 1983 training camp. A copy of this contract has not been included in the record on appeal.

Under the facts of this case, we conclude that the respondents are not entitled to a credit against the award for payments made to claimant under a legal obligation independent of the Workmen's Compensation Act, particularly where those payments had such an uncertain relationship to claimant's disability. The above facts, when viewed in a light most favorable to the party prevailing below, provide substantial competent evidence to support the district court's denial of credit to respondents under the provisions of K.S.A. 44-510f(b).

Affirmed.